# UNITED STATES EX REL. STEVENS *v.* RICHARDS.

STATUTES; INTOXICATING LIQUORS; MANDAMUS; RENEWAL OF BARROOM LICENSE.

1. Although an act to regulate the sale of intoxicating liquor contains penal clauses, it is to be regarded as a general revenue and remedial statute, and given a liberal, and, at the same time, reasonable, construction in aid of the remedy, rather than a strict and narrow one, in the interest only of those who violate or evade its provisions (following *Lauer* v. *District of Columbia*, 11 App. D. C. 453); and, in construing such a statute, the court will consider its objects and purposes so as to effectuate, rather than destroy, those objects and purposes (following *District of Columbia* v. *Dewalt*, 31 App. D. C. 327).

2. The remedy by mandamus is one that the courts apply to prevent a failure of justice, and the writ is never granted at the suit of one who comes into court with unclean hands (following *United States ex rel. Turner* v. *Garfield*, ante, 195), and the relator must, in all cases, demonstrate the justice of his case.

3. A party seeking to compel the excise board to grant a renewal of his barroom license is not in a position to ask the court to grant him the extraordinary remedy by mandamus, when the answer of the board to his petition for the writ, which answer he admits to be true, is to the effect that his premises have been the resort of disreputable, vi-

cious, and disorderly characters, prostitutes, and women of questionable reputation, and that he has violated the terms of his license by selling liquor to intoxicated men, and is not a fit person to have a license.

4. The provision of sec. 5 of the act of March 3, 1893 (27 Stat. at L. 563, chap. 204), as amended, regulating the sale of intoxicating liquor in the District of Columbia, that, until the conviction of a licensee for keeping a disorderly ·or disreputable place, his license shall not be revoked or taken away from him, limits the power of the excise board over granted licenses, and has no reference to applications for renewal of licenses; and, in case of an application for a renewal, where the board, after investigation and hearing, rejects it on the ground that the applicant's resort is disreputable, and that he has sold liquor to intoxicated men, and is not a fit person to have a license, such action is within the scope of the board's authority, and hence not the subject of judicial review. (Distinguishing *Griffin* v. *United States*, 30 App. D. C. 291.)

No. 2014.   Submitted May 5, 1909.   Decided June 1, 1909.

HEARING on an appeal from an order of the Supreme Court of the District of Columbia, dismissing a petition for the writ of mandamus.                                    *Affirmed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from an order of the supreme court of the District of Columbia, refusing to issue a writ of mandamus to the excise board of the District, directing the granting of appellant's application for a barroom license.   The case was heard on petition and answer.

The petition, among other things, stated that for ten years relator, James Stevens, had been the lessee and proprietor of No. 430 8th street, N. W., where he had conducted a licensed barroom; that on October 31, 1908, he deposited $800 with the collector of taxes for a renewal of his license for the year 1909. and made application to the excise board for such renewal; that the board, on March 22, 1909, rejected his application, and refused to renew his license; that no petition of a majority of real estate owners and resident housekeepers adjacent to his

place of business, to the effect that his barroom had become objectionable or not necessary, had been filed with the board; that the action of the board was without authority of law, and null and void. The petition closed with a prayer for the granting of a writ of mandamus.

A rule to show cause issued, and the respondents filed their answer. In this answer it was stated that, on December 2, 1908, said application was referred to the superintendent of police, who, in turn, referred it to certain police officers of the precinct in which the barroom was located; that said officers made their report on the same day to the superintendent of police, who thereupon transmitted said report to the board; that said report showed that relator was convicted in 1907 for keeping a Sunday bar; that he was arrested in 1906 for the same offense, and that the case was still pending; that said premises were, within the past year, the resort of disreputable, vicious, or disorderly characters; that there had been arrests made upon or about said premises, or complaints reported of disorder at said place, during the past license year; that there was reason to believe that said relator had, during said year, violated the law in other respects; that, on the second floor of said premises, there were rooms where men and women were served with drinks; that, in the largest of these rooms, there were attractions for the amusement of patrons, many of whom were prostitutes and women of questionable reputation; that, during the past license year, the relator was arrested on the charge of selling intoxicating liquors to minors; that young girls were allowed to visit the place, and that a number of prostitutes were arrested on the premises, and charged with vagrancy; that, on January 16, 1909, the board notified relator that they would consider his application on the 21st of that month, at which time the relator appeared with his attorney and participated in the hearing; that several policemen testified on opposition to the granting of the license, and that their testimony "fully substantiated the said police reports in all their details, and declared that said barroom was the worst one in the said police precinct;" that thereafter members of said excise board

visited said barroom "and found the conditions then and there existing such as made it imperative, in the public interests, that said saloon should be closed;" that "while the complainant was present, said defendants found a drunken man singing at the piano and a crowd of men sitting at tables, singing while in a drunken condition, and acting in a disorderly manner; * * * that sales of liquor were then and there being made to the said men while they were drunk, and that women were in the said room, drinking with men;" that the conditions surrounding said saloon were "the worst of any saloon that they had ever observed;" that thereafter, on consideration of said testimony, and as the result of said investigation, the said board rejected said application.

*Mr. James S. Easby-Smith* and *Mr. Albert Sillers* for the appellant.

*Mr. E. H. Thomas,* Corporation Counsel, for the appellees.

Mr. Justice Robb delivered the opinion of the Court:

The appellant contends that the action of the excise board, in passing upon an application for the renewal of a license, is purely ministerial except as to the ascertainment of facts expressly included within its quasi-judicial power of determination, and that, therefore, said "excise board has no power to refuse a renewal of a license upon its own finding that a place is disorderly, but can so act only upon a conviction by a court of competent jurisdiction 'of keeping a disorderly or disreputable place.'"

Whether appellant's contentions are well founded depends upon the construction to be given the act of March 3, 1893, entitled, "An Act Regulating the Sale of Intoxicating Liquors in the District of Columbia" (27 Stat. at L. 563, chap. 204), as amended by the act of May 11, 1894 (28 Stat. at L. 75, chap. 73), sec. 15 of the act of August 14, 1894 (28 Stat. at L. 282, chap. 287), paragraph 38 of sec. 7 of the act of July 1, 1902

(32 Stat. at L. 627, chap. 1352), and the act of April 28, 1904 (33 Stat. at L. 565, chap. 1815).

Section 2 of said act of March 3, 1893, as amended, constitutes the board of assistant assessors of the District an excise board, whose duty it is, *"to take up and consider all applications* for license to sell intoxicating liquors, and *to take action on such applications, and the action of said board shall be final and conclusive,* and only on the granting by said board of a license to an applicant to sell intoxicating liquor shall the assessor issue a license to such applicant; and said board shall make such rules and regulations for carrying into effect this act as they may deem requisite and proper. And said board shall make an annual report to Congress, setting forth the number of applications for license both favorably and unfavorably acted on," etc.

Section 3, as amended, provides for the appointment by said board of a clerk and an assistant clerk, and requires the board to keep "a full record of all applications for license, of all recommendation for and remonstrances against the granting of licenses, *and of their action thereon."* The section further provides that the clerk of the board shall be *ex officio* the inspector of licenses issued under the act, whose duty it is to make the inspection required by the act under the orders of the board, and make full report on such inspection to the board at such time as it may order.

Section 4 requires every applicant for a license to file a petition therefor, which petition the board is required to consider in the order in which it is filed and numbered. The petition must state the name and residence of the applicant and how long he had resided there, the place for which the license is desired, the name of the owner of the premises upon which the business licensed is to be carried on; that the applicant is a citizen of the United States, not less than twenty-one years of age, and that the applicant has never, since the passage of the act, been guilty of violating the laws regulating the sale of intoxicating liquors or laws for the prevention of gambling in the District; that he is not the owner or licensee named in any such license

then in force; that he intends to carry on such business for himself, and not for any other person; that he will so carry it on; that he intends to superintend in person the management of the business licensed, and that he will so superintend it.  The petition must be verified by the affidavit of the petitioner.

Section 5, as amended, requires every applicant to file with his petition the consent of the majority of real estate owners and housekeepers on the side of the square where the proposed barroom is to be located.  The section, as amended, further provides that any established hotel or tavern having at least twenty-five rooms for guests *shall always have the right to obtain a license for a barroom* on complying with the provisions of the act.  It is further provided in this section that it shall not be necessary for a licensee, after the expiration of the period for which his license is issued, again to obtain the consent of said property owners and resident housekeepers aforesaid "unless the majority of the real-estate owners and resident housekeepers aforesaid shall petition the board, stating in such petition that said barroom is not necessary, and is objectionable."

The section further provides "that upon a conviction of such licensee of keeping a disorderly or disreputable place, it shall be the duty of said excise board to revoke such licensee's license; but, until such conviction, such licensee's license shall not be revoked or taken away from him."

Section 6 prohibits the selling or furnishing of intoxicating liquors under certain conditions, authorizes sales under certain other conditions, and clothes the board with authority, in its discretion, to issue a license to any duly incorporated club on the petition of the officers of the club.

Section 7 prohibits the granting of a license for a greater period than one year, and the transfer of a license except upon certain specified conditions.

Section 8 requires applicants for a license to deposit the amount of the license fee with the collector of taxes of the District at the time of filing the application with the excise board.  It is then provided that *"if, upon consideration of the application for license* by the board, as provided for in this act, the

board should decide to grant the license prayed for, they shall notify the assessor and the applicant of such decision, in writing, and the applicant shall thereupon receive his or her license."

Section 9 requires every person receiving a license to frame it under glass, and place it in a conspicuous place in his or her chief place of business, so that anyone entering such place may easily read said license.

Section 10 requires all *applicants* for license, and all persons holding licenses, to "allow the duly authorized agent or officer of the excise board full opportunity and every facility to examine, at any time during business hours, the premises where intoxicating liquor is sold, *and for which a license is asked or has been granted."*

Section 12 provides that anyone required by the act to have a license, who engages in the sale of intoxicating liquors without a license, shall be punished by fine or imprisonment in the District jail or workhouse.

Section 13 imposes a penalty of not less than $50 nor more than $200 upon any person convicted of violating any provision of his license, and an additional penalty for a second conviction; and also that, upon a second conviction, his license shall be revoked and no license thereafter granted him.

Section 16, as amended, clothes the members of the excise board with "power to administer oaths or affirmations in any matter affected by the operation of this act," and further provides that "any person having taken such oath or affirmation who shall knowingly and corruptly give false testimony before said board or any member thereof, as to a material fact, shall be deemed guilty of perjury," and be punished upon conviction as specified.

Section 17 requires all applicants who have had a license during the preceding year to apply for a renewal of such license on or before November 1st of each license year, and provides that they shall be permitted to continue business "until license shall be granted or *refused* by the excise board."

Section 19, as amended, prohibits, *inter alia,* the sale of in-

toxicating liquors to any person under the age of twenty-one years, provides a penalty, and also provides that, "in addition to such penalty, the license for the place in which such intoxicating liquors were sold to a minor shall be revoked."

The sections not noticed contain nothing material to this inquiry.

In subdivision *c* of sec. 13 of the rules of the excise board it is declared that a license will not be granted "to any person keeping a place where idle, noisy, disorderly, or suspicious characters congregate."

Under the act of July 23, 1866 (14 Stat. at L. 213, chap. 215), a liquor license was without force until "approved by the board of police, and so certified by the secretary thereof, under the office seal." This power of the board of police was transferred to the board of district commissioners by the act of June 11, 1878 (20 Stat. at L. 102, chap. 180). The exercise of the discretionary authority thus reserved to the commissioners was sustained in *United States ex rel. Manion* v. *District Comrs.* 6 Mackey, 409, and in *United States ex rel. Roop* v. *Douglass,* 8 Mackey, 99.

It will thus be seen that, for many years prior to the passage of the act under consideration, the dangers attending the indiscriminate sales of intoxicating liquors in this District had been recognized by Congress, and also the difficulty of defining with precision the conditions upon which licenses should be issued. During all those years ultimate discretion in respect to the granting of licenses was lodged in the District authorities. Was the act of 1893 intended to take away, and did it in fact take away, that discretion? Owing to the increased population of the District it was then even more essential to the well-being of the community than before that licenses should not be granted to evil-disposed persons. This was well known to Congress, and, notwithstanding the penal clauses, "the act is to be regarded as a general revenue and remedial statute, and given a liberal, and, at the same time, reasonable, construction, in aid of the remedy, rather than a strict and narrow one, in the interest only of those who violate or evade its provisions." *Lauer*

*v. District* of *Columbia,* 11 App. D. C. 453. In construing such a statute, we may consider its objects and purposes, so as to effectuate, rather than destroy, those objects and purposes. *District of Columbia* v. *Dewalt,* 31 App. D. C. 327.

The act of 1893 established an excise board, and, in terms, clothed that board with authority to take up, consider, and take *final* action on, all applications for license. The discretionary power of the board in acting upon applications was expressly limited only in the case of hotel applications. Upon complying with the provisions of the act, hotels having a certain number of rooms became entitled as a matter of right to a barroom license. *Griffin* v. *United States,* 30 App. D. C. 291. There is nothing in the act expressly conferring such a right upon other applicants, but, on the contrary, there are many provisions plainly inconsistent with the existence of such a right. If the board is clothed with no discretionary power, its creation was an idle and useless act on the part of Congress, for a clerk would have been as capable as the board of ascertaining whether there had been a compliance by the applicant with the formal requisites of the statute, and whether the applicant had been twice convicted during the preceding year of violating any of the provisions of his license. The creation of the board, the delegation to it of power to consider and act finally on applications, the requirement that all applicants shall allow the agent of the board full opportunity and every facility to examine the premises for which a license is asked, and the provisions that the board shall have authority to take testimony, show that Congress did not intend that the proprietor of such a place as the record shows relator has been keeping should be entitled, as a matter of right, to a renewal of his license.

It appearing in the answer, the averments of which must be here accepted as true, that the premises of the relator have been the resort of disreputable, vicious, and disorderly characters, prostitutes, and women of questionable reputation, that the relator violated the terms of his license by selling liquor to intoxicated men, and that the relator is not a fit person to have a license, he is certainly not in a position to ask this court to grant

him this extraordinary remedy,—a remedy that courts apply to prevent a failure of justice, and never to a suitor with unclean hands. *United States ex rel. Turner* v. *Garfield,* ante, 195. "The applicant must, in all cases, substantially demonstrate the propriety and justice of his case," 26 Cyc. Law & Proc. p. 144; Merrill, Mandamus, par. 66. In a case like this, the interests of the public ought to be considered.

But, quite apart from the above observations as to the conduct of relator, we are clearly of the opinion that the action of the board in denying his application was within the scope of its authority, and hence not subject to judicial review.

The provision in sec. 5 of the act, that, until a conviction of a licensee of keeping a disorderly or disreputable place, his license shall not be revoked or taken away from him, limits the power of the board over granted licenses, and has no reference to applications.

The contention that the provision in sec. 6, that the board may, in its discretion, issue a license to a duly incorporated club, and, in its discretion, grant a permit to such club to sell intoxicating liquors to members and guests, indicates an intention on the part of Congress to deprive the board of discretion in other matters, is without force. Under sec. 5 every applicant for a license for a barroom was required to obtain the written permission of property holders and resident housekeepers adjacent to his place of business. This provision was general, and, of course, included incorporated clubs. By sec. 6 Congress clothed the board with discretion to permit the sale of liquors to members and guests of such clubs, regardless of the provisions of sec. 5.

Upon a careful review of this legislation we conclude that it was not intended by Congress to confer upon any applicant a vested right to a license to sell intoxicating liquors in this District, except hotels, and that the excise board is justified in refusing a license in such a case as this.

The order is affirmed, with costs.                    *Affirmed.*