**Duane S. MARUSA, Appellant,**

v.

**DISTRICT OF COLUMBIA et al.**

**Nos. 72–1027, 72–1140.**

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 20, 1972.

Decided Aug. 21, 1973.

---

Jack H. Olender, Washington, D. C., for appellant.

Leo N. Gorman, Asst. Corp. Counsel for the District of Columbia with whom C. Francis Murphy, Corp. Counsel and Richard W. Barton, Asst. Corp. Counsel, were on the brief, for appellee, District of Columbia.

Samuel Intrater, Washington, D. C., with whom Albert Brick, Washington, D. C., was on the brief for appellee, DeMiers.

Before BAZELON, Chief Judge, and TAMM and LEVENTHAL, Circuit Judges.

BAZELON, Chief Judge:

Appellant Duane Marusa brought these actions in the District Court[1] to recover damages for a bullet wound he suffered, allegedly at the hand of Officer Delbert C. Clark of the Metropolitan Police Department. In his amended complaint, Marusa alleged that, on May 29, 1969, Officer Clark consumed an excessive amount of liquor in a bar on K Street, N.W., and that immediately after leaving the bar, the "grossly intoxicated" Clark shot Marusa with his service revolver.

Marusa sought to hold Officer Clark liable for the injuries he had inflicted. He sought to hold Police Chief Jerry V. Wilson liable for negligence in hiring Officer Clark and in failing to train and supervise him adequately. He sought to hold the District of Columbia liable for negligence on the same grounds, and vicariously liable for the negligence of Chief Wilson. Marusa asserted both common law claims and statutory civil rights claims (under 42 U.S.C. § 1983) against each of these defendants. Finally, he sought damages for negligence from DeMiers Investments, Inc., the own-

er of the bar in which Officer Clark was drinking prior to the shooting.

Officer Clark was never served with process and is not a party to this appeal. Chief Wilson and the District of Columbia moved to dismiss the suit on the grounds that a) the complaint failed to state a claim upon which relief could be granted and b) it had been filed after the applicable statute of limitations had run. DeMiers moved to dismiss for failure to state a claim. The District Judge granted the motions to dismiss. Marusa appealed.

In reviewing such dismissals, this court must accept as true the allegations of the plaintiff's complaint.[2] This being so, we think that under our precedents and well-established principles of tort liability Marusa's complaint stated causes of action against Chief Wilson, the District of Columbia, and DeMiers Investments. Moreover, we think the actions were filed within the time limit set by the applicable statute. We therefore reverse and remand the cases for further proceedings.

I. The Claims Against Chief Wilson and the District

A. *Cause of Action*

Marusa's action against the District Government and its officials is similar, in its essential respects, to the suit that was before us in Carter v. Carlson, 144 U.S.App.D.C. 388, 447 F.2d 358 (1971). There, as here, the plaintiff alleged that he had been the victim of unnecessary and excessive force at the hands of a District policeman; there, as here, the individual officer was never found for service of process; and there, as here, the plaintiff prosecuted his suit against the police chief and the District of Columbia under both common law and statutory theories. We held in *Carter* that,

---

1. Under D.C.Code § 11–501(4), the District Court for the District of Columbia had exclusive jurisdiction over these actions. Thus, we remain responsible for deciding the issues of "local" law that this case raises on the basis of the applicable precedents and with

due reference to decisions of the District of Columbia Court of Appeals.

2. *E.g.*, Gardner v. Toilet Goods Ass'n, 387 U.S. 167, 172, 87 S.Ct. 1526, 18 L.Ed.2d 704 (1967); 2A Moore, Federal Practice § 12.08 (1968).

on both theories, the complaint stated causes of action against the District and its police officials.

■ Earlier this year, the Supreme Court reversed that ruling in part. District of Columbia v. Carter, 409 U.S. 418, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973). After analyzing the purposes and scope of 42 U.S.C. § 1983, the Court concluded that the District of Columbia is not a "state or territory" within the meaning of that statute. Thus, there is no federal statutory basis for Marusa's action.

■ The Court's opinion, however, made it clear that Carter v. Carlson was reversed only "insofar as that judgment sustained [the plaintiff's] claims under § 1983." Id. at 419–420, 93 S.Ct. at 604. Accordingly, our holding in Carter as to the common law cause of action—the alternative ground of Marusa's suit—remains the law.[3] Indeed, in arguing Carter to the Supreme Court, the District of Columbia appears to have conceded that our common law holding was correct:

> It is true, as the circuit court of appeals recognized, that, at the time the action was filed, respondent was entitled to proceed against [the District of Columbia] in the United States District Court for the District of Columbia on a common law theory . . . .[4]

On the basis of Carter and the line of cases upon which it relied,[5] we hold that Marusa has stated a cause of action against the District Government and the police chief on common law grounds.

The fact that Officer Clark was out of uniform at the time of the alleged assault on Marusa does not affect our conclusion.[6] Officer Clark's tort was made possible only through the use of his service revolver, which he carried by authority of the city government. Policemen are, in fact, not only authorized but required to carry their service revolvers, as well as their badges and identification cards, "at all times" (except in their homes), whether in or out of uniform.[7] Clearly, the government has a duty to minimize the risk of injury to members of the public that is presented by this policy. Thus, if the officer misuses his weapon,[8] a judge or jury might reasonably find that misuse to have been proximately caused by the government's negligence in hiring, training, or supervising the policeman. Whether Chief Wilson or the government was negligent here is not before us and we intimate no opinion on that issue.

We are aware that the line of precedent upon which our decision here is predicated—in particular, Carter,

---

3. We note that one aspect of our holding in Carter—that the District is liable to respond in damages, under the theory of respondeat superior, for the intentional torts of its police officers acting within the scope of their employment—has recently been accepted by a panel of the District of Columbia Court of Appeals. Graves v. District of Columbia, 287 A.2d 524 (1972). For a discussion of the dissent in that case, see text at notes 11–14 infra.

4. Petitioner's Brief for Certiorari at 6, District of Columbia v. Carter, 409 U.S. 418, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973).

5. In particular, Baker v. Washington, 145 U.S.App.D.C. 277, 448 F.2d 1200 (1971); Thomas v. Johnson, 295 F.Supp. 1025 (D. D.C.1968).

6. Id.; Graham v. District of Columbia, 139 U.S.App.D.C. 378, 433 F.2d 536 (1971).

7. Metropolitan Police Department Manual, § 2.3:1 (1972). When out of uniform, policemen may carry their service revolvers in a concealed manner. Id. § 2.3:2. Without such authorization, carrying a concealed weapon would be unlawful. 22 D.C.Code § 3204. The reason for this policy is that a D.C. policeman is always on duty, in the sense that he has the authority and responsibility to take "proper police action in any matter coming to [his] attention requiring such action." Manual, supra, § 2.1:4.

8. The court is not faced with the question of what liability the city might have for an off-duty policeman's tortious conduct, not involving the use of his service revolver.

Baker v. Washington,[9] and Thomas v. Johnson[10]—was strongly criticized in a dissenting opinion last year in Graves v. District of Columbia, 287 A.2d 524, 525 (D.C.Ct.App.1972). The majority of the District of Columbia Court of Appeals panel in *Graves* did not find that dissent persuasive. Nonetheless, the dissent represents the kind of thoughtful criticism that requires us to retrace the paths of our reasoning and to reassess our conclusions. Having done so, we think it would be unwise to abandon the *Carter—Thomas* rule.

■ The dissenting opinion in *Graves* suggests that, because the Federal Tort Claims Act preserves immunity for the federal government in the area of intentional torts, that immunity should extend to the local government as well. 287 A.2d at 526–527. As Judge McGowan noted for the court *en banc* in Spencer v. General Hospital,[11] the federal act in no way controls the existence or scope of the local government's immunity from suit. *Spencer* made it clear that the extension or contraction of the District's immunity is a matter of judicial policy. In Carter v. Carlson, we expressed our reluctance to extend that immunity to encompass intentional torts. As we indicated there,[12] the intentional tort immunity of the FTCA has been severely criticized; no sound reasons were offered to support such immunity when the act was written, and none has been set forth in the intervening decades.[13] The dissenting opinion in *Graves* offers no policy considerations to support its position in favor of such immunity.

The dissenting *Graves* opinion is correct when it warns that "funds to pay any judgment against the District of Columbia must in the last analysis ema-nate from Congress." 287 A.2d at 527. But that fact does not seem to advance the argument. The source of funds for a particular governmental activity is not invariably determinative of whether that activity is "federal" or "local". If this were the test, there would be nothing "local" at all about the D.C. government, because all funds for the government of this city "emanate from Congress" in one way or another. Thus the "source of funds" rationale, logically extended, would leave no room whatsoever for the operation of "local" law in our jurisdiction.

The *Graves* dissent suggests that Carter v. Carlson was based on the "unfounded and dangerous assumption" that the District of Columbia "will not be adversely affected by this extension of liability." 287 A.2d at 527, 528. Carter v. Carlson did not involve that assumption. It seems obvious that any individual or institution, public or private, will be adversely affected to some degree if it is subjected to a lawsuit. Carter v. Carlson reflected "a long-standing judgment that the threat of damage suits does not significantly impede the effective operation of a police department, when the impediment is weighed against the public interest in a tort remedy for police misconduct."[14] In essence, *Carter* struck a balance. As is true of any balancing test, the opinion might be criticized if it had misweighted one side of the issue. But to suggest that Carter v. Carlson was based on absolutist assumptions is to miss the thrust of the opinion altogether.

Accordingly, we think the present case should be governed by the rules set forth in Thomas v. Johnson and Carter v. Carlson. Under those precedents, Marusa can get to court against Chief Wil-

9. 145 U.S.App.D.C. 277, 448 F.2d 1200 (1971).

10. 295 F.Supp. 1025 (D.D.C.1968).

11. 138 U.S.App.D.C. 48, 425 F.2d 479 (1969).

12. 144 U.S.App.D.C. at 396, 447 F.2d at 366.

13. So concluded Prof. Davis in 1970, when the statute was 24 years old. K. Davis, Administrative Law Treatise, 1970 Supp. § 25.-08.

14. 144 U.S.App.D.C. at 393 n. 9, 447 F.2d at 363 n. 9.

son and the District of Columbia on a theory of common law liability.

### B. *Statute of Limitations*

■ The government defendants maintain, however, that they have a complete defense to Marusa's suit under the Statute of Limitations. Marusa filed his complaint some two years and three months after the incident of which he complains occurred. The government argues that Marusa's suit is essentially an action for "wounding;" since the applicable limitation period for "wounding" is one year, the government insists that the suit was properly dismissed.

The application of the "wounding" statute appears to be one of first impression—a remarkable happenstance when one considers that the statute in question can be traced back to 1623.[15] Although the parties have presented arguments as to whether or not Officer Clark's shooting of Marusa can be classified as "wounding", we need not reach the issue on this appeal. Marusa's suit against Officer Clark is not before us. Our case involves Marusa's claim against Chief Wilson and the D.C. government; those claims are grounded in negligence. Carter v. Carlson.[16] The limitation period for negligence actions in the District of Columbia is three years. 12 D.C.Code § 301(8). Thus Marusa's complaint was filed within the applicable limitation period and should not have been dismissed.

### II. The Complaints Against DeMiers Investments, Inc.

Marusa also sought damages from DeMiers Investments, Inc., which operated a (now defunct) "singles" establishment known as "Wayne's Luv." Marusa alleged, in essence, that on the night of the shooting Officer Clark was served so many drinks at "Wayne's Luv" that he became grossly intoxicated; that employees of "Wayne's Luv" knew or should have known at the time they served Officer Clark that he was intoxicated and might pose a danger to others; and that Clark's intoxication was proximately related to his assault on Marusa. DeMiers moved to dismiss on the ground that the law of our jurisdiction does not permit such an action against a tavern owner. The trial judge initially denied the motion to dismiss. After Marusa's claims against the governmental defendants were dismissed, however, the parties requested a final judgment as to DeMiers as well, apparently so that Marusa's claims could all be reviewed together on appeal. Following these requests, the trial judge granted DeMiers' motion to dismiss.

■ We think the trial judge's initial decision was correct, and that Marusa's allegations state a cause of action against DeMiers. In so holding, we do not intimate any view as to whether or not DeMiers is in fact liable for all or part of Marusa's injuries. We find only that the complaint encompasses a legally valid theory of liability which can properly be placed before a jury.

■ Under the District of Columbia Code, it is a criminal offense to serve alcoholic beverages to a person who is "intoxicated" or who "appears to be intoxicated." 25 D.C.Code §§ 121, 132. Marusa's complaint sets forth a prima facie case, subject, of course, to rebuttal, that DeMiers violated this statute in serving Officer Clark. It is settled law in this court that "violation of an ordinance intended to promote safety" can give rise to a negligence action. *See* Whetzel v. Jess Fisher Management Co., 108 U.S. App.D.C. 385, 389, 282 F.2d 943, 947

---

15. The current provision, codified at 12 D.C. Code § 301(4), provides a one-year limitation for complaints alleging "libel, slander, assault, battery, mayhem, wounding, malicious prosecution, false arrest, or false imprisonment." This section was adopted from a 1715 Maryland colonial statute (*see* 1 Kitty, Laws of Md. 111 (1799)) which

was substantially identical to the early English statute codified at 39 Elz. II Cha. II, Jacobi C. 16 (1623).

16. The complaints contain no allegation that Chief Wilson or the District is liable under *respondeat superior* for the tort of Officer Clark.

(1960).[17] Although we have generally rejected the view that violation of a statute constitutes negligence *per se,* we have frequently held that such violation is sufficient evidence of negligence to permit a suit. We think it clear that this principle applies in this case.

*Whetzel* provides the guidelines for determining whether violation of a criminal statute can create civil liability. Generally, the law or regulation should be one designed to promote safety; the plaintiff must be "a member of the class to be protected" by the statute; and the defendant must be a person upon whom the statute imposes specific duties.

Marusa's case meets these criteria. It seems obvious that regulations governing the sale of liquor are intended to enhance public safety; such statutes serve "the well-being of the community" by guarding against "the dangers attending the indiscriminate sale of intoxicating liquors."[18] It is also obvious that the statute imposes duties upon tavern owners such as DeMiers. In light of the purpose of the statute, we think those duties are owed to the community at large—not only to patrons of the tavern-owners' taverns,[19] but also to third parties, such as Marusa, who might come into contact with inebriated persons.[20] It follows that the present suit comes within the rule of *Whetzel* and similar cases.

We might decline to apply the *Whetzel* principle to the statute involved in this case if significant policy considerations militated against its application. We think, however, that important policy factors will be served by permitting this suit to go to trial. We have long recognized that the liquor regulations of the District should be given a liberal reading to effect their "remedial objects and purposes." District of Columbia v. Gardiner, 39 App.D.C. 389, 393 (1912). The possibility of civil liability can be an effective means of enhancing the protective purposes of such legislation. *Cf.* Prosser, Torts 193 (1964). Moreover, permitting Marusa his day in court will assure that the moral and empirical judgments required to allocate the cost of his injury will be made by a jury.[21] This comports with the trend of our recent tort cases, which have taken these value-charged decisions away from judges and entrusted them to the jury, a community surrogate which should more accurately reflect the views of society as a whole.[22]

DeMiers argues, however, that we should not follow the *Whetzel* principle in this case. It maintains that tavern owners can only be held liable in jurisdictions where civil liability is specifically imposed by statute.[23] DeMiers cites various authorities for its position that "the common law knows no right of action against a seller of intoxicating liquors, as such, for 'causing' intoxication of the person whose negligent or willful wrong has done injury."[24] Judges and

17. Quoting Ross v. Hartman, 78 U.S.App.D. C. 217, 218, 139 F.2d 14, 15, 158 A.L.R. 1370 (1943) ; Richardson v. Gregory, 108 U.S.App.D.C. 263, 281 F.2d 626 (1960) ; Danzansky v. Zimbolist, 70 App.D.C. 234, 105 F.2d 457 (1939).

18. United States ex rel. Stevens v. Richards, 33 App.D.C. 410, 417 (1904). The *Stevens* case dealt with the regulations established in the Act of March 3, 1893, as amended. The statute in the present case is the post-Prohibition reenactment of those regulations. *See* 25 D.C.Code § 101.

19. District of Columbia v. Gardiner, 39 App. D.C. 389 (1912).

20. This is a fairly standard construction of liquor regulations; *see* Vesely v. Sager, 5 Cal.3d 153, 95 Cal.Rptr. 623, at 631, 486 P. 2d 151, at 159 (Cal.1971) and cases cited therein.

21. Since the initial complaint, Marusa has demanded a jury trial against all defendants.

22. Smith & Smith v. Arbaugh's, 152 U.S. App.D.C. 86, 469 F.2d 97 (1972) ; Cooper v. Goodwin, 478 F.2d 653 (D.C.Cir., 1973).

23. Such statutes, known as "Dram Shop Acts" or "Civil Damage Acts," have been enacted in a number of states. *Cf.* Annot., 65 A.L.R.2d 923.

24. Quoting Joyce v. Hatfield, 197 Md. 249, 251, 78 A.2d 754, 756 (1951).

scholars have generally been wary of this kind of generalization from the common law,[25] and with good reason. The common law is an immense and amorphous body of doctrine.[26] Certainly there were periods in its development when courts would have had no trouble finding a proximate relationship between the seller of alcoholic beverages and the actions of an intoxicated person. *Cf.* Pollock & Maitland, The History of English Law, Book II, c. 8, § 2. In the modern era, a number of recent cases in both federal and state courts have indicated, in contrast to the authorities cited by DeMiers, that common law liability can extend to the tavern owner—particularly when he has violated applicable liquor regulations.[27] Whether or not this is the majority view, it is clearly in ascendancy.[28] Thus we cannot accept DeMiers' contention that permitting the cause of action here would depart sharply from common law principles.

It is true that most of the cases finding tavern owners liable for the actions of their patrons involved automobile accidents; in those cases, the plaintiff's injury resulted from the patron's drunken driving, and not from drunken shooting as is alleged here. That distinction does not affect our holding, which is based on DeMiers' violation of statutory duty.[29] If the automobile/gun distinction is relevant at all, it goes to the jury

question of the foreseeability of Marusa's injury.[30]

From the facts alleged in Marusa's complaint, it appears that DeMiers violated a statutory duty owed to Marusa. That allegation is adequate at law to warrant a trial on the merits of Marusa's action against DeMiers.

III.  Conclusion

For the reasons stated above, the dismissals as to the District of Columbia, Chief Jerry V. Wilson, and DeMiers Investments, Inc. are reversed and the cases remanded for further proceedings consistent with this opinion.

---

25. *See, e. g.,* Mr. Justice Holmes' letter to Harold Laski of Dec. 15, 1917, observing that the development of English and American Law is not susceptible to "sweeping and inadequate generalizations." 1 Holmes-Laski Letters 119. For similar sentiments, see 2 Holmes-Laski Letters 822–23; Black & White Taxi & T. Co. v. Brown & Yellow Taxi & T. Co., 276 U.S. 518, 533, 534, 48 S. Ct. 404, 72 L.Ed. 681 (1928) (Holmes, J., dissenting).

26. *Id.,* at 533, 534, 48 S.Ct. 404. *Cf.* Montrose, Precedent in English Law 151–57 (1968).

27. The leading cases are Waynick v. Chicago's Last Department Store, 269 F.2d 322 (7th Cir., 1959); and Rappaport v. Nichols, 31 N.J. 188, 156 A.2d 1 (1959). *See also* Jardine v. Upper Darby Lodge No. 1973, 413

Pa. 626, 198 A.2d 550 (1964); Prevatt v. McClennan, 201 So.2d 780 (Fla.App., 1967); Deeds v. United States, 306 F.Supp. 348 (D.Mont., 1969); Vance v. United States, 355 F.Supp. 756 (D.Alas.1973); Vesely v. Sager, 5 Cal.3d 153, 95 Cal.Rptr. 623, at 629, 486 P.2d 151 (1971), and cases cited therein at 157.

28. Vesely v. Sager, *supra,* 95 Cal.Rptr. at 629, 486 P.2d at 157; Deeds v. United States, *supra. Compare* Annot., 130 A.L.R. 352 (1941) *with* Annot., 75 A.L.R.2d 833 (1960).

29. *Cf.* Prevatt v. McClennan, 201 So.2d 780 (Fla.App., 1967), holding a bar owner liable for injuries suffered by plaintiff, who was shot by drunken patrons of the bar.

30. Prosser, Torts 202 (1964).