Shenan SMITH

and

Sharon Parish, Plaintiffs,

v.

Joseph A. GRIMES, Defendant.

Civ. A. No. 92–580 SSH.

United States District Court,
District of Columbia.

Aug. 27, 1992.

William H. Dawe, III, Washington, D.C., for plaintiffs.

Kenneth E. Labowitz, Young & Goldman, Alexandria, Va., for defendant.

1. If the Attorney General determines that the employee was acting within the scope of his employment, then the United States automatically is substituted as the defendant. The Attorney General's determination is conclusive for purposes of removing an action brought in state court to federal court.

## OPINION

STANLEY S. HARRIS, District Judge.

Before the Court is defendant's petition for certification pursuant to 28 U.S.C. § 2679(d)(3) that he was acting within the scope of his employment at the time of the events underlying this action. The United States, through the Attorney General, opposes the petition. On consideration of the entire record, the Court denies defendant's petition.

### Background

Pursuant to the Federal Tort Claims Act (FTCA), a party may recover damages from the United States for injury "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment...." 28 U.S.C. § 1346(b). Under the statute, the Attorney General must defend an employee who is sued for acts taken within the scope of his employment. *Id.* § 2679(c). On receiving service of a complaint against a federal employee, the Attorney General makes an initial determination whether the employee in fact was acting within the scope of his employment at the time of the alleged injury.[1] *Id.* § 2679(d)(2). If the Attorney General refuses to certify that an employee was acting within the scope of his employment, the employee may "petition the court to find and certify that the employee was acting within the scope of his office or employment." *Id.* § 2679(d)(3). Defendant Grimes seeks such certification.[2]

This action is the third lawsuit before this Court arising out of a car accident that occurred on September 29, 1989. On that date at approximately midnight, defendant Grimes allegedly collided with a car in which plaintiffs Shenan Smith and Sharon Parish were passengers. Grimes was driving a vehicle provided to him in his work as

2. When a petition for certification is filed in an action brought against a federal employee in state court, the Attorney General may remove the action to federal court to resolve the scope of employment issue.

a special agent with the United States Drug Enforcement Administration (DEA). Smith and Parish filed a suit in this court against the United States under the FTCA, Civil Action No. 90–1021. The driver of the car in which Smith and Peay were riding, Kimberly Peay, filed a separate action naming Grimes and the United States as defendants, Civil Action No. 90–2052, and the two cases were consolidated.

The United States moved for summary judgment in both cases on the ground that Grimes was acting outside the scope of his employment at the time of the accident. The evidence before the Court consisted of the affidavit of Craig E. Richardson, Associate Chief Counsel, DEA. Based on Richardson's uncontradicted factual assertions, the Court granted summary judgment in favor of the United States on April 30, 1991.[3] The summary judgment order disposed of the case filed by Smith and Parish in its entirety; Peay's claim against Grimes individually remains pending. Smith and Parish appealed the Court's summary judgment order. The United States Court of Appeals for the District of Columbia Circuit summarily affirmed the summary judgment order on February 28, 1992. *Smith v. United States,* 957 F.2d 912 (D.C.Cir.1992) (per curiam).

Following the entry of summary judgment for the United States, Smith and Parish filed a claim against Grimes in the Superior Court of the District of Columbia, which was assigned to Judge Von Kann (CA–91–7899). Grimes filed a petition for certification that he was acting within the scope of his employment at the time of the accident.[4] Judge Von Kann held an evidentiary hearing on October 9, 1991, after which he took the matter under advisement. Before Judge Von Kann issued a decision, the United States removed the case to this Court,[5] and the case was assigned to the undersigned as related to the two previous actions.[6]

## Facts

Defendant Grimes submitted the transcript of his testimony at the evidentiary hearing before Judge Von Kann. That testimony provided more information than Richardson's affidavit on which the Court relied in granting summary judgment for the United States in the earlier actions. However, Grimes's testimony and Richardson's affidavit are consistent as to the facts that are material to the determination before the Court.[7] The following findings of fact are based on Grimes's testimony and the entire record.

Defendant Grimes is an officer of the Police Department of the Metropolitan Washington Airports Authority (MWAA). At the time of the accident underlying this suit, Grimes was detailed by the MWAA to the DEA as a special agent and assigned to the Mass Transportation Detail Task Force. Grimes's routine duty assignments included surveillance and response to drug-related incidents at Washington National Airport, Dulles International Airport, Union Station, and interstate bus stations. The DEA provided Grimes with an unmarked

---

**3.** Richardson's affidavit set forth his conclusion that Grimes was acting outside the scope of his employment at the time of the accident. The Court expressly noted that it was not bound by Richardson's opinion, and in fact reached its conclusion through an independent analysis of the factual allegations of the affidavit.

**4.** Grimes had not yet received service of the complaint at the time the Court granted the United States' motion for summary judgment. Thus, Grimes is not collaterally estopped by the earlier ruling.

**5.** The Notice of Removal states that the United States did not receive service of the complaint as required by § 2679(d)(3). A transcript of the evidentiary hearing before Judge Von Kann indicates that he sent notice to the United States Attorney's Office to provide it with an opportunity to present evidence at the hearing. However, the Notice of Removal states that the United States Attorney was unaware of the action against defendant Grimes until it received the proposed findings of fact and conclusions of law that defendant Grimes submitted to Judge Von Kann following the hearing.

**6.** Grimes filed an identical petition for certification in Civil Action No. 90–2502. The Court denies that petition by separate order of this date.

**7.** For this reason, the Court finds it unnecessary to hold an evidentiary hearing as requested by defendant Grimes.

1989 Ford Tempo for use in those duties. Grimes was authorized to use the car to travel between his residence in Germantown, Maryland, and work. In addition, Grimes was directed by his DEA supervisor to utilize the car to respond to emergency calls during his off-duty hours.[8]

On September 29, 1989, Grimes completed his regular duty assignment at National Airport between 8:00 and 11:00 p.m. On his way home, Grimes stopped at the Fraternal Order of Police Lodge (F.O.P. Lodge) at 512 5th Street, N.W., until approximately midnight. The stop was not authorized by the DEA nor was it in furtherance of Grimes's duties as a special agent. After consuming an unknown amount of alcohol, Grimes left the F.O.P. Lodge to continue home. Near the intersection of Maine Avenue and 15th Street, N.W., Grimes collided with the car driven by Peay and occupied by plaintiffs Smith and Parish.

United States Park Police officers responded to the scene of the accident. The officers cited Grimes for failure to maintain control of his vehicle and for driving under the influence of alcohol.[9] Grimes paid a fine in lieu of a court appearance on the first charge and entered a plea of guilty to the charge of driving under the influence. As a result of the incident, Grimes was removed from the DEA Mass Transportation Detail Task Force. The MWAA Police Department initiated a disciplinary proceeding against Grimes for, *inter alia,* operating an official vehicle while under the influence of alcohol. The disciplinary proceeding resulted in removal from his position as a sergeant.

### Discussion

Defendant's petition requires the Court to determine as a matter of law whether he was acting within the scope of his employment at the time of the accident. "[T]he law of the place where the act or omission occurred" governs the scope of employment issue. *Williams v. United States,* 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761 (1955); *Hoston v. Silbert,* 681 F.2d 876 (D.C.Cir.1982); *Henderson v. United States,* 429 F.2d 588 (10th Cir.1970). Therefore, District of Columbia law governs the determination before the Court.

The District of Columbia has "adopted the definition of scope of employment in § 228 of the Restatement (Second) of Agency (1957)." *Moseley v. Second New St. Paul Baptist Church,* 534 A.2d 346, 348 n. 4 (D.C.1987); accord, *District of Columbia v. Coron,* 515 A.2d 435, 437 (D.C.1986). That section provides:

(1) Conduct of a servant is within the scope of employment if, but only if:

(a) it is of the kind he is employed to perform;

(b) it occurs substantially within the authorized time and space limits;

(c) it is actuated, at least in part, by a purpose to serve the master,

. . . . .

(2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.

Restatement (Second) of Agency § 228. Consistent with that definition, the District of Columbia Court of Appeals has stated a general rule for determining whether an employee acted within the scope of his employment:

"[W]hatever is done by the employee in virtue of his employment and in furtherance of its ends is deemed by the law to be an act done within the scope of his employment, and that, in determining whether the servant's conduct was within the scope of his employment, it is

---

**8.** Like other law enforcement officers, Grimes was required to keep his DEA identification and weapon with him at all times. Grimes also carried a beeper so that he could be summoned for immediate response in an emergency.

**9.** The Park Police officers' report of the incident states that Grimes had a strong odor of alcohol on his breath and that he spoke with a thick tongue and slurred speech. The report also states that Grimes took a long time to produce his license and that he fumbled his wallet.

proper to inquire whether he was at the time engaged in serving his master." *Coron*, 515 A.2d at 437 (quoting *Penn Central Transportation Co. v. Reddick*, 398 A.2d 27, 29 (D.C.1978)). That court also has stated that: "An act is not within the scope of employment if done for the employee's purposes only; unless the tort occurred at least in part as a result of a desire to serve the employer, the employer is not liable." *District of Columbia v. Davis*, 386 A.2d 1195, 1203 (D.C.1978).

Grimes's stop at the F.O.P. Lodge took him beyond the time and space limits of his employment and exceeded the authorized use of the car.[10] Those facts alone do not require the Court to find that Grimes was acting outside the scope of his employment. *See, e.g., Carey v. Lyon*, 533 F.2d 649 (D.C.Cir.1976); *Davis*, 386 A.2d at 1195. The use of the car at the time of the accident might fall within the scope of Grimes's employment if it was "actuated by a purpose to serve the master."

Defendant relies on *Davis*, 386 A.2d at 1195, to support his argument that his actions served his employer's law enforcement purposes and therefore were within the scope of his employment at the time of the accident.[11] *Davis* involved a claim against the District of Columbia for injuries suffered when an off-duty police officer's service revolver accidentally discharged as he removed it from its holster. *Id.* at 1197–98. The officer had not been on duty the entire day and was at a private residence when the revolver discharged. The *Davis* court noted that police regulations required the officer to carry his weapon at all times so that he would be ready for duty if necessary. *Id.* at 1202. The court concluded that the officer "was furthering his employer's function of maintaining public order" by carrying the revolver at the time of the incident.[12] *Id.* The *Davis* court therefore held that the officer was acting within the scope of his employment when the revolver discharged.[13] *Id.* at 1204–05. The court commented in conclusion: "To hold otherwise would place upon an innocent victim the loss associated with the City's placing a dangerous weapon in the hands of an officer on a round-the-clock basis." *Id.* at 1205.

Despite certain factual similarities to *Davis*, this case is distinguishable.[14] In

---

10. However, Grimes was not "far beyond" the space and time limits of his employment.

11. Defendant also relies on *Wade v. District of Columbia*, 310 A.2d 857 (D.C.1973), and *Marusa v. District of Columbia*, 484 F.2d 828 (D.C.Cir. 1973). In *Wade*, the District of Columbia Court of Appeals held "that the District of Columbia may be sued under the common law doctrine of *respondeat superior* for the intentional torts of its employees acting within the scope of their employment." *Wade*, 310 A.2d at 863. The *Wade* court did not attempt to define "scope of employment." Therefore, the case simply supports the proposition that an intentional tort is not per se outside the scope of employment of a District of Columbia employee. *Marusa* involved facts similar to *Davis*. An off-duty police officer, who allegedly was grossly intoxicated, shot the plaintiff outside a bar with his service revolver. *Marusa*, 484 F.2d at 830. The *Marusa* court noted that police regulations required the officer to carry his revolver at all times. *Id.* at 831. The court concluded that, based on the facts as alleged, plaintiff could pursue a claim against the District of Columbia for negligent supervision and training of the officer. *Id.* The opinion did not address a *respondeat superior* claim or the definition of "scope of employment."

12. "The weapon was necessary to his carrying out the mandate of his employer that he be in a constant state of readiness to take official action." *Davis*, 386 A.2d at 1203.

13. The *Davis* court considered two additional factors significant to its decision. First, the officer could have been compelled to respond to an emergency, and therefore his employer maintained the right to "direct and control" his actions. *Davis*, 386 A.2d at 1203. Second, the officer was aware "that he was, for certain purposes, effectively on duty at all times." *Id.* Although Grimes also was "on call" at all times, his state of mind was significantly different than that of the officer in *Davis*. Grimes was aware that he was not authorized to use the car to stop at the F.O.P. Lodge. Therefore, he did not have the intention to serve his employer's purpose.

14. Many of the similarities between this case and *Davis* actually weigh against finding that Grimes acted within the scope of his employment. Grimes, like the officer in Davis, was off-duty and was in a location for personal or social rather than work-related purposes. In addition, the injuries in both cases were caused by actions in violation of the employer's regulations.

*Davis*, the employer required the officer to wear his revolver at all times and places except at home. Although Grimes was provided the car to commute to work and to respond to emergency calls, he was not required to use the car at all times. In fact, he concedes that he was not authorized to drive the car for personal use and that he was not authorized to visit the F.O.P. Lodge. Thus, the key fact that brought the conduct within the scope of the officer's employment in *Davis* does not exist in this case. The visit to the F.O.P. Lodge (and the use of the car to do so) did not further a work-related purpose nor was it intended to serve such a purpose. In the language of the Restatement (Second) and the District of Columbia Court of Appeals, the visit served the employee's purposes only. *See Coron*, 515 A.2d at 437.

The accident occurred close in time and location to the visit to the F.O.P. Lodge. In attempting to drive home while under the influence of alcohol, Grimes continued the diversion from his authorized route to the F.O.P. Lodge. He did not regain a purpose to serve his employer simply by resuming his trip home. *See Snodgrass v. Jones* 755 F.Supp. 826 (C.D.Ill.1991). Therefore, the Court concludes that Grimes was not acting within the scope of his employment at the time of the accident underlying this case.

### Conclusion

For the reasons set forth above, the Court denies defendant's motion for certification. The FTCA provides "if, [in considering the petition], the [District] court determines that the employee was not acting within the scope of his office or employment, the action or proceeding shall be remanded to the State court." 28 U.S.C.A. § 2679(d)(3). Accordingly, the Court remands this action to the Superior Court of the District of Columbia.

---

In *Davis* the fact that the officer was carrying the revolver pursuant to police regulations outweighed the contrary factors. In this case, the fact that Grimes used the car for an unauthorized purpose is an additional factor against finding that he acted within the scope of his employment.