FORREST DEAN HINEGARDNER, Appellant, v. MAR-
COR RESORTS, L.P. V., a Nevada Limited Partner-
ship d/b/a RIO SUITE HOTEL & CASINO; RIO
SUITE HOTEL & CASINO; THE MIRAGE CASINO-
HOTEL, a Nevada Corporation d/b/a THE MIRAGE
CASINO-HOTEL; THE MIRAGE CASINO-HOTEL; P
& W, INC., d/b/a EDDIE'S; AND EDDIES, Respond-
ents.

No. 22764

December 22, 1992 844 P.2d 800

[Rehearing denied March 19, 1993]

*Brent A. Leavitt,* Las Vegas, for Appellant.

*Vargas & Bartlett,* and *Christopher Kaempfer,* Las Vegas, for
Respondents Marcor and L.P. V.

*Carolyn Ellsworth* and *William Werner,* Las Vegas, for
Respondent Mirage.

*Barker, Gillock, Koning, Brown & Earley,* and *Bruce S. Dick-
inson,* Las Vegas, for Respondents P & W and Eddies.

## OPINION

By the Court, YOUNG, J.:

### THE FACTS

On the evening of February 24, 1990, Lyndon J. Thomason ("Thomason"), a minor, consumed alcohol at respondents' establishments—The Mirage Casino-Hotel; Rio Suite Hotel & Casino, and Eddie's, a bar. Appellant, Forrest Dean Hinegardner ("Hinegardner"), alleged that respondents, Marcor Resorts, L.P. V., a Nevada Limited Partnership d/b/a Rio Suite Hotel & Casino; Rio Suite Hotel & Casino; The Mirage Casino-Hotel, a Nevada Corporation d/b/a The Mirage Casino-Hotel; The Mirage Casino-Hotel; P & W, Inc., d/b/a Eddie's; and Eddies ("Vendors") allowed Thomason to loiter, occupy and remain in their establishments and that Vendors' employees served Thomason alcohol without asking him for a valid identification.

Thereafter, Thomason, under the influence of alcohol, drove his car on U.S. Highway 95 in Las Vegas. Near the intersection of Rainbow Boulevard, Thomason's car collided with a car in which Hinegardner was a passenger. The accident injured Hinegardner and several others.

On June 11, 1991, Hinegardner filed an amended complaint alleging negligence and negligence per se claims against Vendors. In the amended complaint, Hinegardner alleged that shortly before the accident, Vendors negligently sold or offered alcoholic beverages to Thomason, a minor. Hinegardner maintains that as a result of Vendors' illegal and negligent acts, Thomason drove his car while intoxicated and, thus, caused the automobile accident.

Vendors filed a motion to dismiss pursuant to NRCP 12(b)(5) on the grounds that Nevada case law provided no redress against

sellers or furnishers of alcoholic beverages for resulting injuries or damages caused by the acts of intoxicated persons. The district court, without writing an opinion, granted the 12(b)(5) motion. Hinegardner appealed.

The issue on appeal is whether this court should change existing Nevada case law to recognize a claim for relief against one furnishing liquor to a minor in favor of those injured as a consequence of the minor's intoxication.

## DISCUSSION

At common law, courts refused to recognize a cause of action arising out of the sale or furnishing of intoxicating beverages. The rationale underlying this refusal was that individuals, drunk or sober, were responsible for their own torts. The courts held that drinking the intoxicant, not furnishing it, was the proximate cause of the injury. In other words, the common law considers the act of selling the intoxicating beverage as too remote to serve as the proximate cause of an injury resulting from the negligent conduct of the purchaser of the drink. Nevada subscribes to the common law rule.

In 1969, we addressed this issue in Hamm v. Carson City Nugget, Inc., 85 Nev. 99, 450 P.2d 358 (1969). In *Hamm,* heirs of pedestrians who were killed by a drunken driver brought an action against the alcohol provider. We affirmed the district court's summary judgment in favor of the alcohol provider.

In *Hamm* we adopted the common law rule of non-liability after carefully considering the law in other jurisdictions, the arguments on both sides and the serious social policy concerns inherent in this issue. *Id.* at 100-02, 450 P.2d at 359-60. This court concluded that if civil liability were to be imposed upon commercial alcohol vendors, it should be accomplished by "legislative act after appropriate surveys, hearings, and investigations." *Id.* at 101, 450 P.2d at 359. In *Hamm,* we also rejected the argument that the violation of penal statute NRS 202.055, regulating the sale of alcohol to minors, constituted negligence per se. *Id.* at 102, 450 P.2d at 360.

We reaffirmed *Hamm* in Yoscovitch v. Wasson, 98 Nev. 250, 645 P.2d 975 (1982); Bell v. Alpha Tau Omega, 98 Nev. 109, 642 P.2d 161 (1982); Van Cleave v. Kietz-Mill Minit Mart, 97 Nev. 414, 633 P.2d 1220 (1981); Davies v. Butler, 95 Nev. 763, 602 P.2d 605 (1979); Mills v. Continental Parking Corp., 86 Nev. 724, 475 P.2d 673 (1970).

On appeal, Hinegardner forwards several arguments to support his contention that this court should no longer adhere to the

common law rule of non-liability for commercial alcohol vendors.

First, Hinegardner argues that the "modern trend" in other jurisdictions is to allow an injured party to assert a claim against a vendor. Hinegardner also produces a laundry list of eighteen cases representing fifteen different jurisdictions that purportedly adopted the "modern trend."

Second, Hinegardner argues that the "modern trend of authorities also recognize [sic] a negligence per se claim" against a vendor for violation of penal statutes regulating the sale of alcohol to minors. He states that Vendors violated a penal statute when they furnished Thomason with alcohol. Hinegardner further contends that violation of the penal statute constituted negligence per se. Hinegardner then provides another list of twenty-four cases representing twenty different jurisdictions that allegedly provide a negligence per se cause of action for violations of penal statutes prohibiting the sale of alcohol to minors.

Third, Hinegardner contends that the change in Nevada case law can be accomplished by this court, rather than the legislature because the common law rule was court created.

Vendors counter with several arguments to persuade the court to adhere to the common law rule.

First, Vendors reject the argument that a "new trend" favoring vendor liability has emerged in other jurisdictions. Vendors state that of all the jurisdictions Hinegardner cites as representing the new trend, seventeen of those jurisdictions reached decisions prior to 1982. Thus, Vendors conclude that this court was "cognizant of each of these decisions when *Yoscovitch* was handed down and [the court] declined to follow them."

Second, Vendors assert that we should not create a negligence per se action because this court in *Hamm, Davies, Bell,* and *Yoscovitch,* continually declined to recognize the violation of a penal statute as negligence per se.

Third, Vendors assert that the issue of commercial alcohol vendor liability is better left to the legislature. The legislature, Vendors maintain, is more suitably equipped to discuss, debate and analyze the political, economic and social concerns inherent in this topic.

After an independent evaluation of the law, we feel constrained to affirm the district court's ruling. We are not convinced by Hinegardner's "new trend" argument.

First, Hinegardner's "new trend" analysis is somewhat overstated. An independent examination of the cases that Hinegardner includes in his "new trend" analysis demonstrates that only Arizona, Colorado, North Carolina, Oklahoma, Pennsylvania, Wisconsin, and Wyoming abandoned the common law position

after 1982.[1] *All* of the other cases Hinegardner cites were either decided *before* 1982, reaffirmed pre-1982 precedent, or applied civil liability statutes.[2] As Vendors correctly point out, a number of states such as Alabama, Arkansas, Delaware, Kansas, Maryland, Nebraska, and Virginia still continue to adhere to the common law rule.

Therefore, we conclude that although a majority of jurisdictions no longer follows the common law rule, Nevada's status as a minority jurisdiction does not constitute a rational basis to overturn a long line of Nevada Supreme Court precedent. Indeed, the fact that other jurisdictions continue to follow the common law reminds us of the observation we made in *Hamm:* "Whatever choice we make for Nevada is supportable by case authority elsewhere." *Hamm,* 85 Nev. at 100, 450 P.2d at 359.

Second, we note that in the absence of evidence of legislative intent to impose civil liability, a violation of a penal statute is not

---

[1]The "new trend" cases Hinegardner cites include: Brannigan v. Raybuck, 667 P.2d 213 (Ariz. 1983) (*Brannigan* was superseded by a dramshop statute in 1989. *See* Ariz.Rev.Stat.Ann. § 4-311-12 (1989 & Supp. 1990)); Largo Corp. v. Crespin, 727 P.2d 1098 (Colo. 1986); Freeman v. Finney, 309 S.E.2d 531 (N.C. 1983); Brigance v. Velvet Dove Restaurant Inc., 756 P.2d 1232 (Okla. 1988); Matthews v. Konieczny, 527 A.2d 508 (Pa. 1987); Sorenson v. Jarvis, 350 N.W.2d 108 (Wis. 1984) (*Sorenson* was superseded by a dram shop statute in 1985. *See* Wis.Stat.Ann. § 125.035 (West 1985)); McClellan v. Tottenhoff, 666 P.2d 408 (Wyo. 1983).

[2]Cases decided before 1982: Alesna v. LeGrue, 614 P.2d 1387 (Alaska 1980); Vesley v. Sager, 486 P.2d 151 (Cal. 1971); Marusa v. District of Columbia, 484 F.2d 828 (D.C. Cir. 1973); Ono v. Applegate, 612 P.2d 533 (Haw. 1980); Elder v. Fisher, 217 N.E.2d 847 (Ind. 1966); Lewis v. State, 356 N.W.2d 181 (Iowa 1977); Pike v. George, 434 S.W.2d 626 (Ky. 1968); Trail v. Christian, 213 N.W.2d 618 (Minn. 1973); Munford v. Peterson, 368 So.2d 213 (Miss. 1979); Rappaport v. Nichols, 156 A.2d 1 (N.J. 1959); Mason v. Roberts, 294 N.E.2d 884 (Ohio 1973); Campbell v. Carpenter, 566 P.2d 893 (Or. 1977); Jardine v. Upper Darby Lodge No. 1973, 198 A.2d 550 (Pa. 1964); Brookins v. Round Table, Inc., 624 S.W.2d 547 (Tenn. 1981); Yost v. State, 640 P.2d 1044 (Utah 1981); Callan v. O'Neil, 578 P.2d 890 (Wash. 1978).

Cases that reaffirmed pre-1982 precedent: Morris v. Farley Enters., Inc., 661 P.2d 167 (Alaska 1983) reaffirming Nazareno v. Urie, 638 P.2d 671 (Alaska 1981); Bryant v. Alpha Entertainment Corp., 508 So.2d 1094 (Miss. 1987), reaffirming Munford v. Peterson, 368 So.2d 213 (Miss. 1979); Purchase v. Meyer, 737 P.2d 661 (Wash. 1987), reaffirming Callan v. O'Neil, 578 P.2d 890 (Wash. 1978).

Cases that applied civil statutes: Floyd v. Bartley, 727 P.2d 1109 (Colo. 1986); Saint Hill v. Tabor, 542 So.2d 499 (La. 1989); Longstreth v. Gensel, 377 N.W.2d 804 (Mich. 1985); Bissett v. D.M.I., Inc., 717 P.2d 545 (Mont. 1986); Huston v. Konieczny, 556 N.E.2d 505 (Ohio 1990).

negligence per se. Bell v. Alpha Tau Omega, 98 Nev. 109, 642 P.2d 161 (1982). In 1987, the legislature amended the penal statute which Vendors allegedly violated, NRS 202.055. As Vendors properly assert, in 1987 the legislature could have added a civil liability component to NRS 202.055. We infer from the legislature's inaction that it did not intend to impose civil liability for violations of this penal statute.

Third, we will also continue to follow the *Hamm* rule—only legislative mandate should create civil liability for vendors who serve alcohol to minors. Clearly, a decision whether to abrogate such a fundamental rule as the one under consideration is the function of the legislative, not the judicial, branch of government. Where, as here, the issue involves many competing societal, economic, and policy considerations, the legislative procedures and safeguards are well equipped to the task of fashioning an appropriate change, if any, to the settled rule. *See* Blanton v. North Las Vegas Mun. Ct., 103 Nev. 623, 748 P.2d 494 (1987).

Indeed, in an effort to annul this common law rule, we are confronted with numerous issues that this court admittedly may be ill-equipped to address at this time. For example, should casinos, tavern owners and other commercial vendors alone be subject to liability or should social hosts be liable too? If social hosts are liable, will minors be accountable as well? Should the intoxicated purchaser also have a cause of action against the vendor or social host? Must the injured plaintiff prove that the purchaser was visibly intoxicated at the time he or she was served? And, should any new rule be retroactive or prospective in its application? If this court, as the dissent would suggest, ruled for Hinegardner, we must then prepare to answer these and a sundry of other multifarious questions for the flood of injured litigants that will inevitably crowd the Nevada courts. Notwithstanding the moral indignation and emotional angst that this issue rightfully arouses, we must resist opening those floodgates.

Finally, we acknowledge that Nevada has a legitimate interest in preventing the injuries, death and carnage which are caused every day on Nevada highways by drunken drivers. We feel sympathetic and sensitive to the plight of Mr. Hinegardner. Civil liability, or an accountability akin to it, which imposes some responsibility on a vendor who willfully or carelessly serves alcohol to an intoxicated patron or a minor has much to commend it. However, such a measure should be the result of legislative action rather than judicial interpretation.

We have carefully considered the other issues on appeal and

conclude that they lack merit. Accordingly, we affirm the district court's order granting Vendors' motion to dismiss.

SPRINGER and ROSE, JJ., concur.

STEFFEN, J., with whom MOWBRAY, C. J., agrees, dissenting:

For "many moons," common law courts have been improving the lot of humankind by recognizing and implementing, through legitimate common-law processes, accepted social standards and mores. Progressively greater emphasis has been placed on the value, quality, and security of a human life rather than the financial rewards of human enterprise. The protective umbrella of tort law has especially benefitted from the judiciary's incisive expansion of the common law.

In the celebrated case of MacPherson v. Buick Motor Co., 111 N.E. 1050 (N.Y. 1916), the venerable Cardozo wrote: "Precedents drawn from the days of travel by stagecoach do not fit the conditions of travel to-day. The principle that the danger must be imminent does not change, but the things subject to the principle do change. They are whatever the needs of life in a developing civilization require them to be." *Id.* at 1053. The product at issue in *MacPherson* was an automobile that was capable of traveling at the speed of 50 miles per hour. The dissent in *MacPherson* would have adhered to the prevailing, traditional view that liability could not extend beyond the parties who were in contractual privity. Thus, the manufacturer of the automobile could be liable only to the retailer who purchased it from the manufacturer. Cardozo, however, speaking for the court, observed:

> If the nature of a thing is such that it is reasonably certain to place life and limb in peril when negligently made, it is then a thing of danger. If to the element of danger there is added knowledge that the thing will be used by persons other than the purchaser, and used without new tests, then, irrespective of contract, the manufacturer of this thing of danger is under a duty to make it carefully.

*Id.*

Today, of course, highway vehicles are capable of speeds well over twice that of concern to the *MacPherson* court. Highway deaths and injuries have reached a magnitude that is both a national tragedy and disgrace. The role of alcohol in the death and maiming of countless numbers of men, women and children each year is well and indisputably attested. The shattered concourses of victims of alcohol-related accidents have combined with a restive and angry society to create a responsive, solid majority of courts that have recognized a cause of action against negligent vendors of alcohol.

It is instructive to note the development of the common law in its response to the growing menace of inebriated drivers on the highways. Justice Erickson, writing for the Supreme Court of Colorado in Largo Corp. v. Crespin, 727 P.2d 1098 (Colo. 1986), recounted:

> The modern era of dramshop liability began in 1959, when two courts—the Seventh Circuit in *Waynick v. Chicago's Last Department Store,* 269 F.2d 322 (7th Cir. 1959), *cert. denied,* 362 U.S. 903, 80 S.Ct. 611, 4 L.Ed.2d 554 (1960), and the New Jersey Supreme Court in *Rappaport v. Nichols,* 31 N.J. 188, 156 A.2d 1 (1959)—held that a third party injured by an intoxicated person may bring a negligence action against the commercial vendor who sold liquor to the intoxicated person. Both decisions rejected the defendants' contention that the sale or service of an alcoholic beverage could not, as a matter of law, be the proximate cause of injury to a third party. The *Rappaport* court said: "Where a tavern keeper sells alcoholic beverages to a person who is visibly intoxicated or to a person he knows or should know from the circumstances to be a minor, he ought to recognize and foresee the unreasonable risk of harm to others through action of the intoxicated person or the minor." 156 A.2d at 8. The court concluded that the danger was "particularly evident in current times when traveling by car to and from the tavern is so commonplace and accidents resulting from drinking are so frequent." *Id.*

The *Largo* court recognized the clear foreseeability of injury resulting from drivers whose abilities and judgment are impaired by intoxicants. Moreover, the court described as "outdated and ill-reasoned," the old common law rule that "the person who consumed alcohol became a superseding cause of the injury and broke the causal relation between the vendor's conduct and the plaintiff's injuries." *Id.* at 1103.

The majority in the instant case perpetuate the "outdated and ill-reasoned" decisions of the past on the gossamery rationale that any change in the law should emanate from the legislature. I suggest that the majority's deference to the legislative branch of government is neither justified nor responsive to the public policy of this state. The majority's intransigence is unjustified because, in the finest tradition of the common law, "the overwhelming majority of courts have abandoned the old common-law rule and allowed negligence actions against commercial vendors of alcoholic beverages." *Largo,* 727 P.2d at 1101.

Today's majority opinion is also unresponsive to Nevada's public policy as reflected by ever increasing criminal sanctions

against persons who drive under the influence of alcohol. Unfortunately, criminal sanctions against offending drivers accomplished little by way of discouraging purveyors of intoxicants from serving persons already numbed by the effects of alcohol.

Moreover, today's "head-in-the-sand" ruling fails to recognize the facts of life. I intend no disrespect for our legislators, but the realities of political life in a state heavily financed by establishments that benefit economically from the sales and inducements of alcoholic beverages leave small reason to believe that dramshop legislation will soon materialize. In a state that relies so extensively on "odds," I suggest that the prospects for dramshop legislation are about the same as they were for voluntary legislative redistricting when judicial rescue was necessitated in the form of Baker v. Carr, 369 U.S. 186 (1962).

Although placing economic considerations above ongoing human sacrifice to alcohol is sufficiently distressing of itself, I suggest that the majority's tacit fears of economic ruin from embracing the majority rule are unfounded. Again, the *Largo* decision is instructive on the point:

> [A]s to the consequences of imposing such a burden upon tavern owners, we reject Largo's claim that civil liability for the negligent sale of alcohol would impose insurmountable proof problems on tavern owners. Whatever problems of proof exist, the plaintiff will be confronted with the same obstacles in reconstructing the facts, and the plaintiff, not the defendant, will bear the burden of proving a breach of duty.

*Largo*, 727 P.2d at 1103.

The enormous perils to which our citizens are constantly exposed on the highways of our state and nation from intoxicated drivers demand resourceful, effective, and humane solutions. The judicial branch of government should be at the vanguard in protecting society from this pervasive menace. In recognizing the inherent power of the judiciary to "decide the common law questions of duty, breach of duty and proximate cause," the *Largo* court cogently declared, "[i]t is the province of the judiciary to develop, interpret, and apply the common law. We do not go beyond the proper sphere of the judiciary, nor do we encroach upon legislative prerogatives, by reevaluating common-law rules in light of present circumstances." *Id.* at 1104.

The majority framed the issue of the instant case in terms of "whether this court should change existing Nevada case law to recognize a claim for relief against one furnishing liquor to a minor in favor of those injured as a consequence of the minor's intoxication." This court could have seized the moment to pro-

vide a significant step forward in the war against the contagion of havoc thrust upon our highways by human time bombs activated by alcohol.

For the reasons abbreviated above, I respectfully register my disappointment and dissenting vote over the majority's refusal to embrace the eminently wise position adopted by the overwhelming majority of courts in our sister states.