*1340
 
 OPINION
 

 By the Court,
 

 Young, J.:
 

 FACTS
 

 On July 12, 1990, Daniel Patrick Lovett was twenty years and nine months old. At about 11:45 that night, he visited Joe’s Tavern in Hawthorne, Nevada, and was served alcoholic beverages. Lovett remained at Joe’s Tavern until approximately 1:15 a.m. on the morning of July 13, 1990, when he went to the El Capitan Hotel/Casino. Lovett stayed at the El Capitan until approximately 6:00 a.m., at which time he got into his vehicle and began driving to Sacramento, California. At approximately 6:30 a.m., Lovett crossed over the center line of Highway 95 north of Schurz, Nevada, and collided head-on with a motorhome. The motorhome’s four occupants, along with Lovett, were killed. At the time of the accident, Lovett had a blood alcohol level of 0.187 percent.
 

 On March 30, 1992, Shauna Snyder, the special administrator of Lovett’s estate, brought an action for negligence, malice and breach of contract against respondents. In her complaint, Snyder alleged that even though employees at Joe’s Tavern knew that Lovett was not yet twenty-one years old and that he planned to drive to Sacramento, they negligently and maliciously served him alcoholic beverages. In addition, Snyder asserted that the Sheriff’s Department acted negligently and with malice in implementing a policy that required deputies not to ask for the identification of patrons at Joe’s Tavern. Finally, Snyder alleged that various
 
 *1341
 
 signs at Joe’s Tavern, stating that alcoholic beverages would not be served to underage patrons, established a contract between Joe’s Tavern and the public. According to Snyder, by serving Lovett alcoholic beverages, Joe’s Tavern breached its contractual duty to refuse to sell him such beverages. On August 27, 1992, pursuant to NRCP 12(b)(5), the district court entered an order granting respondents’ motion to dismiss Snyder’s action.
 

 DISCUSSION
 

 Snyder asserts that the district court erred in dismissing her action because it is distinguishable from prior Nevada cases. In particular, Snyder contends that her action involves the sale of alcohol to an underage drinker, not to an inebriated person, and injury to the drinker, not a third party. Snyder also argues that there is a direct nexus here between the sale of alcohol and the death of Lovett, and that this case is not based on the violation of any criminal statutes.
 

 In reviewing an order granting a motion to dismiss, this court must “determine whether or not the challenged pleading sets forth allegations sufficient to make out the elements of a right to relief.” Edgar v. Wagner, 101 Nev. 226, 227, 699 P.2d 110, 111 (1985) (citations omitted). We conclude that Snyder’s complaint failed to state a claim upon which relief could be granted and that the district court properly granted respondents’ motion to dismiss.
 

 The issue of tavern keeper liability for alcohol-related injuries was first addressed by this court in Hamm v. Carson City Nugget, Inc., 85 Nev. 99, 450 P.2d 358 (1969). In
 
 Hamm,
 
 we adopted the common law rule that
 
 consuming
 
 alcoholic beverages, and not furnishing them, is the proximate cause of third party alcohol-related injuries. In addition, we determined that a tavern keeper’s violation of a criminal statute prohibiting the sale of alcohol to inebriated persons does not constitute negligence per se. Further, we concluded that if civil liability were imposed on tavern keepers, such liability would have to be established by “legislative act after appropriate surveys, hearings and investigations!.]”
 
 Id.
 
 at 101, 450 P.2d at 359.
 

 During the next thirteen years, we followed
 
 Hamm,
 
 to varying degrees, in five published opinions.
 
 See
 
 Yoscovitch v. Wasson, 98 Nev. 250, 645 P.2d 975 (1982) (concluding that proximate cause of injuries brought about by underage drunken driver was driver’s consumption of alcohol, not vendor’s sale of alcohol); Bell v. Alpha Tau Omega, 98 Nev. 109, 642 P.2d 161 (1982) (ruling that violation of criminal statute prohibiting sale of alcoholic beverages to persons under the age of twenty-one does not
 
 *1342
 
 constitute negligence per se); Van Cleave v. Kietz-Mill Minit Mart, 97 Nev. 414, 633 P.2d 1220 (1981) (holding that sale of alcoholic beverages to underage drinkers does not constitute “willful or wanton misconduct”); Davies v. Butler, 95 Nev. 763, 602 P.2d 605 (1979) (reiterating that violation of law prohibiting provision of liquor to inebriated persons does not constitute negligence per se and concluding that alcohol provider’s willful or wanton misconduct may, in some situations, proximately cause alcohol-related injuries); Mills v. Continental Parking Corp., 86 Nev. 724, 475 P.2d 673 (1970) (ruling that parking lot operator who returned keys to inebriated driver was not liable for subsequent injuries to third party).
 

 Most recently, in Hinegardner v. Marcor Resorts, 108 Nev. 1091, 844 P.2d 800 (1992), we considered a situation similar to that presented here. In
 
 Hinegardner,
 
 an underage drinker, who had consumed alcoholic beverages at several drinking establishments, drove his car on a Nevada highway and collided with another vehicle, injuring its occupants. One of the injured third parties filed a complaint against the tavern keepers, alleging causes of action for negligence and negligence per se. The district court subsequently granted the tavern keepers’ motion to dismiss.
 
 Id.
 
 at 1092-93, 844 P.2d at 801.
 

 On appeal, the injured party maintained that the “modern trend” is to allow third party claims of negligence and negligence per se against tavern keepers, and that this court was an appropriate forum for a change in the law. We considered whether we should modify existing Nevada law to recognize third parties’ claims for relief against tavern keepers who furnish alcoholic beverages to an underage drinker, but concluded that any “modern trend” was not significant enough to justify the abrogation of our long line of decisions denying negligence claims against tavern keepers. We also reiterated that the violation of a penal statute prohibiting the sale of alcohol to an underage person is not negligence per se and concluded that “only legislative mandate should create civil liability for vendors who serve alcohol to minors.”
 
 Id.
 
 at 1095-96, 844 P.2d at 803.
 

 Based upon our prior cases, and, in particular, our recent opinion in
 
 Hinegardner,
 
 we conclude that Snyder failed to set forth allegations sufficient to establish a viable claim against any of the respondents. With regard to Snyder’s negligence claim against the tavern keeper, we have previously adopted the common law rule exempting tavern keepers from liability for alcohol-related injuries:
 

 At common law, courts refused to recognize a cause of
 
 *1343
 
 action arising out of the sale or furnishing of intoxicating beverages. . . . [T]he common law considers the act of selling the intoxicating beverage as too remote to serve as the proximate cause of an injury resulting from the negligent conduct of the purchaser of the drink. Nevada subscribes to the common law rule.
 

 Id.
 
 at 1093, 844 P.2d at 802. Our continued adherence to the bright-line common law rule necessitates our conclusion that, as with injuries to third parties, consumption is the proximate cause of alcohol-related injuries to the drinker.
 

 Furthermore, we have recognized that permitting third-party negligence claims against commercial alcohol vendors would require us “to answer ... a sundry of. . . multifarious questions for the flood of injured litigants that [would] inevitably crowd the Nevada courts.”
 
 Id.
 
 at 1096, 844 P.2d at 804. First-party claims, like third-party claims, would flood our courts with a multitude of questions that are better addressed by the legislature. “Where, as here, the issue involves many competing societal, economic, and policy considerations, the legislative procedures and safeguards are well equipped to the task of fashioning an appropriate change, if any, to the settled rule.” 108 Nev. at 1096, 844 P.2d at 804. We find it noteworthy that following our decision in
 
 Hinegardner,
 
 the 1993 Nevada legislature chose not to enact legislation that would impose civil liability on tavern keepers for the sale of alcoholic beverages to underage drinkers. This choice not to extend liability supports our decision in
 
 Hinegardner
 
 and our decision here.
 

 Snyder’s remaining claims are also insufficient. With regard to her negligence claim against the Sheriff’s Department and its officers, NRS 41.0336 provides that a law enforcement agency and its officers are not liable for negligent acts or omissions unless the victim detrimentally relied on the agency’s or officers’ representations or the officers affirmatively caused harm to the victim. Here, Snyder has made no allegations that would bring her claim of negligence within the purview of NRS 41.0336.
 

 Further, Snyder’s allegations that respondents acted with “malice” do not set forth any right to relief. A plurality of this court has previously defined “malice,” in the context of our punitive damages statute (NRS 42.010), as “hatred and ill-will and the deliberate intent to injure.” Craigo v. Circus-Circus Enterprises, 106 Nev. 1, 9, 786 P.2d 22, 26 (1990). Here, Snyder has alleged no facts suggesting that any of the defendants acted
 
 *1344
 
 with ill-will or a deliberate intent to injure Lovett.
 
 [1]
 
 Finally, as Snyder has not alleged facts necessary to establish contract formation between the tavern and Lovett, her breach of contract claim necessarily fails. We therefore affirm the district court’s order granting respondents’ motion to dismiss.
 

 Rose, C. J., and Shearing, J., concur.
 

 Steffen, J., with whom Springer, J. concurs, dissenting:
 

 For reasons detailed in my dissent in Hinegardner v. Marcor Resorts, 108 Nev. 1091, 844 P.2d 800 (1992), I am compelled to dissent in the instant case.
 

 Unfortunately, the facts of this case are even more egregious and tragic than those in
 
 Hinegardner.
 
 Here, the intoxicated driver, Daniel Patrick Lovett, only twenty years of age, was drinking alcoholic beverages from about 11:45 p.m. until approximately 1:15 a.m. while at Joe’s Tavern in Hawthorne, Nevada. Allegedly, the tavern employees knew that Lovett was under the lawful age for consuming alcoholic beverages and that he planned to drive to Sacramento, California. After leaving Joe’s Tavern, Lovett went to the El Capitán Hotel/Casino where he stayed until his departure for Sacramento at 6:00 a.m. The intoxicated youth had no way of knowing that he had only one-half hour of life left and that in the process of killing himself he would also be an instrument of doom for four innocent people who were moving rapidly toward a rendezvous with a lethal combination of steel and alcohol.
 

 Lovett’s death machine crossed over the center line of Highway 95 north of Schurz, Nevada, and crashed head-on with a motorhome carrying four occupants. Lovett and his victims were all killed at approximately 6:30 a.m. on the morning after Lovett’s night of drinking. Tests demonstrated that Lovett had a blood alcohol level of 0.187 percent at the time of the collision.
 

 Once again, the majority places greater emphasis on economic concerns than on human life. The rationale for the majority’s position is the old bromide that under the common law, it is the
 
 *1345
 

 consumption
 
 of alcoholic beverages rather than the
 
 furnishing
 
 of such beverages that is the proximate cause of third party alcohol-related injuries. In
 
 Hinegardner
 
 it was noted:
 

 It is instructive to note the development of the common law in its response to the growing menace of inebriated drivers on the highways. Justice Erickson, writing for the Supreme Court of Colorado in Largo Corp. v. Crespin, 727 P.2d 1098 (Colo. 1986), recounted:
 

 The modern era of dramshop liability began in 1959, when two courts — the Seventh Circuit in
 
 Waynick v. Chicago’s Last Department Store,
 
 269 F.2d 322 (7th Cir. 1959),
 
 cert. denied,
 
 362 U.S. 903, 80 S. Ct. 611, 4 L. Ed.2d 554 (1960), and the New Jersey Supreme Court in
 
 Rappoport v. Nichols,
 
 31 N.J. 188, 156 A.2d 1 (1959) — held that a third party injured by an intoxicated person may bring a negligence action against the commercial vendor who sold liquor to the intoxicated person. Both decisions rejected the defendants’ contention that the sale or service of an alcoholic beverage could not, as a matter of law, be the proximate cause of injury to a third party. The
 
 Rappoport
 
 court said: “Where a tavern keeper sells alcoholic beverages to a person who is visibly intoxicated or to a person he knows or should know from the circumstances to be a minor, he ought to recognize and foresee the unreasonable risk of harm to others through action of the intoxicated person or the minor.” 156 A.2d at 8. The court concluded that the danger was “particularly evident in current times when traveling by car to and from the tavern is so commonplace and accidents resulting from drinking are so frequent.”
 
 Id.
 

 The
 
 Largo
 
 court recognized the clear foreseeability of injury resulting from drivers whose abilities and judgment are impaired by intoxicants. Moreover, the court described as “outdated and ill-reasoned,” the old common law rule that “the person who consumed alcohol became a superseding cause of the injury and broke the causal relation between the vendor’s conduct and the plaintiff’s injuries.”
 
 Id.
 
 at 1103.
 

 Hinegardner v. Marcor Resorts, 108 Nev. 1091, 1098, 844 P.2d 800, 805 (1992) (Steffen, J., dissenting).
 

 As I previously observed in
 
 Hinegardner,
 
 the majority’s position would place them in solid dissent with the landmark ruling of MacPherson v. Buick Motor Co., 111 N.E. 1050 (N.Y. 1916), on grounds that liability in the manufacture and sale of products, including automobiles, would be limited to those comparatively few instances where there was contractual privity between the
 
 *1346
 
 manufacturer and the purchaser of the product.
 
 See id.
 
 at 1097, 844 P.2d at 804 (Steffen, J., dissenting). Thus, the interposi-tioning of the retailer between the manufacturer and the consumer who would ultimately use and be injured by the defective product, would generally leave the consumer without a remedy for his or her injuries.
 
 See MacPherson,
 
 111 N.E. at 1053-54. Likewise, in negligent entrustment cases, the majority’s reasoning would eliminate the cause of action on grounds that it is the action of the party to whom the instrumentality of harm is negligently entrusted who causes the harm rather than the one who negligently entrusts the instrumentality to someone unsuited to the trust.
 

 As I observed in dissent in
 
 Hinegardner,
 

 [t]he role of alcohol in the death and maiming of countless numbers of men, women and children each year is well and indisputably attested. The shattered concourses of victims of alcohol-related accidents have combined with a restive and angry society to create a responsive, solid majority of courts that have recognized a cause of action against negligent vendors of alcohol.
 

 108 Nev. at 1097, 844 P.2d at 805.
 

 Since the majority once again spurns the opportunity to join “the overwhelming majority of courts [that] have abandoned the old common-law rule and allowed negligence actions against commercial vendors of alcoholic beverages”
 
 (Largo,
 
 727 P.2d at 1101) by ceding the task to the Legislature, I must again register my protest in the strongest of terms.
 

 Given the fact that Nevada has a singularly strong financial dependence upon segments of the state economy that dispense alcohol as a significant inducement to other forms of business activity, it is both unrealistic and irresponsible to espouse the fantasy that the Legislative branch of government will effectively consider and adopt dramshop legislation. Although we can hardly fault our legislators for shunning such an act of self-immolation, there is no excuse for the “non-political” judicial branch of government doing the same. I realize the unfortunate fact that judges, including the members of this court, are elected in this state, but that constitutes no valid excuse for this court’s failing to respond to the clear and increasing demands of our society to give relief to the growing number of victims who fall prey to inebriated drivers on our highways. Despite the apparent need to substantially finance judicial elections with contributions from segments of our state economy that are purveyors of alcoholic beverages, “biting the hand that feeds you” should never be a consideration in the judicial process.
 

 
 *1347
 
 The “overwhelming majority of courts” have advanced the common law to meet the conditions of our present society because it should be clear to all that if vendors of alcoholic beverages are factored into the liability equation, there will be fewer intoxicated drivers, like Lovett, to continue the highway carnage that truly has become such a national disgrace and tragedy. Fewer intoxicated drivers translates into fewer victims. Depreciating inebriated drivers results in the veneration of human life. Placing greater value on human life than economic advantage, lifts society to a higher plane. Conversely, emphasizing commercial advantage over human life and suffering degrades society and lowers the quality of its civilization.
 

 The majority would have us believe that there are so many problems and nuances of problems involved in placing negligent vendors of alcohol in the liability equation, that these problems and the difficulties inherent in their resolution outweigh the substantial attenuation of human misery and death that would result from the implementation of solutions. I suggest that the majority’s fears are as unjustified as its priorities.
 

 Quoting again from my dissent in
 
 Hinegardner,
 
 consider the vision and pervasive impact of the venerable Judge Cardozo who, writing for the
 
 MacPherson
 
 court, said:
 

 “Precedents drawn from the days of travel by stagecoach do not fit the conditions of travel to-day. The principle that the danger must be imminent does not change, but the things subject to the principle do change. They are whatever the needs of life in a developing civilization require them to be.
 

 If the nature of a thing is such that it is reasonably certain to place life and limb in peril when negligently made [such as an intoxicated human ready to operate a high-speed vehicle], it is then a thing of danger. If to the element of danger there is added knowledge that the thing will be used by persons other than the purchaser, and used without new tests, then, irrespective of contract, the manufacturer of this thing of danger is under a duty to make it carefully.”
 

 Hinegardner,
 
 108 Nev. at 1097, 844 P.2d 804-05 (quoting
 
 MacPherson,
 
 111 N.E. at 1053). Moreover, concerning the problems that are of such paramount concern to the majority, I refer again to my dissent in
 
 Hinegardner
 
 where, quoting from the Colorado Supreme Court in
 
 Largo,
 
 that court instructed:
 

 “[A]s to the consequences of imposing such a burden upon tavern owners, we reject Largo’s claim that civil liability for the negligent sale of alcohol would impose insurmountable proof problems on tavern owners. Whatever problems of
 
 *1348
 
 proof exist, the plaintiff will be confronted with the same obstacles in reconstructing the facts, and the plaintiff, not the defendant, will bear the burden of proving a breach of duty.”
 

 Hinegardner,
 
 108 Nev. at 1099, 844 P.2d at 806 (quoting
 
 Largo,
 
 727 P.2d at 1103).
 

 As reflected by the positive response of an overwhelming majority of the common law courts of this nation, there is a compelling need for the judiciary of this state to provide its citizens and the users of its highways with relief from the growing menace of intoxicated drivers. We can realistically look to no other source. This court must recognize the fact that irresponsible and negligent vendors of alcoholic beverages are priming people for roles as drunken drivers who kill and maim the innocent travelers on Nevada’s highways. Entire families are wiped out and destroyed by this menace. This court will have only so many opportunities to address the issues raised in the instant case. Each time we fail to act, we assure the proliferation of needless human death and suffering. Since, in my humble opinion, we have far too long perpetuated a condition that cries out for principled | remedies, partial though they may be, I am again forced to dissent from the majority’s most unfortunate act of judicial forfeiture.
 

 [1]
 

 Furthermore, we have held that knowingly furnishing or selling alcohol to an underage person, even if done more than once, does not constitute “willful or wanton misconduct.”
 
 See Van Cleave,
 
 97 Nev. at 416, 633 P.2d at 1221. Contrary to Snyder’s assertion that her district court action is not based on the violation of any criminal statutes, Snyder’s claim of “malice” is grounded, in part, on respondents’ alleged “violation] [of] state statutes enacted to protect minors.” We have previously held that the violation of a criminal statute regarding the sale of alcohol to a minor does not constitute negligence per se.
 
 See Hinegardner,
 
 108 Nev. at 1095-96, 844 P.2d at 803; Bell v. Alpha Tau Omega, 98 Nev. 109, 642 P.2d 161 (1982). Such a violation, in and of itself, certainly does not suggest “malice.”