MARTIN RODRIGUEZ, INDIVIDUALLY AND AS GUARD-IAN AD LITEM OF FABIAN SANTIAGO, A MINOR CHILD, APPELLANT/CROSS-RESPONDENT, v. THE PRIMA-DONNA COMPANY, LLC, A NEVADA CORPORATION, DBA BUFFALO BILL'S RESORT AND CASINO, AKA PRIMM VALLEY CASINO RESORTS; AND MGM MIRAGE, RESPONDENTS/CROSS-APPELLANTS.

No. 49409

October 1, 2009                                216 P.3d 793

*White, Meany & Wetherall, LLP*, and *Peter C. Wetherall*, Las Vegas, for Appellant/Cross-Respondent.

*Kravitz, Schnitzer, Sloane, Johnson & Eberhardy, Chtd.*, and *Martin J. Kravitz, Regina M. McConnell*, and *Gina M. Mushmeche-Buras*, Las Vegas, for Respondents/Cross-Appellants.

## OPINION

By the Court, HARDESTY, C.J.:

Fabian Santiago, then 17 years old, and his two adult step-uncles Manuel and Daniel Garibay, were asked to leave a hotel property after an evening of drinking and disorderly behavior. Manuel drove the three from the hotel parking lot. Mistaking a frontage road for the freeway, Manuel rolled the vehicle while driving at approxi-

mately 80 miles per hour. Fabian suffered severe spinal injuries in the accident. His guardian brought suit in district court alleging that the hotel acted negligently when it evicted Fabian and his step-uncles from the property by allowing or directing Fabian to be a passenger in a motorized vehicle driven by an intoxicated driver.

In this appeal, we consider whether the district court properly entered summary judgment in favor of the respondent hotel corporations, dismissing appellant's negligence claim. Appellant's claim was grounded, in part, on allegations that respondents' security personnel acted unreasonably when they evicted an intoxicated minor patron, who was injured in a motor vehicle accident. We conclude that the eviction was reasonable as a matter of law. We further conclude that Nevada's rejection of dram-shop liability applies to a claim for damages made by an intoxicated patron that occur after the patron is reasonably evicted.

Second, in this appeal, we are asked to review whether the district court properly denied respondents' motion for attorney fees and costs, which was grounded on an assertion that appellant's negligence action was frivolous. According to respondents, the action was frivolous because it was barred by relevant legal authority. Because appellant's claims are based upon a nonfrivolous argument for the extension of the law defining negligent eviction, we conclude that the district court properly denied respondents' motion for attorney fees and costs.

Finally, we are asked to determine whether a cross-claimant can maintain an implied indemnity claim when the underlying liability action is dismissed through summary judgment without a finding of fault against the proposed indemnitor. Having considered persuasive authority from other jurisdictions, we conclude that a prerequisite to recovery on an implied indemnity claim is a finding that the third-party defendant is liable for damages to the plaintiff on the underlying claim. Implied indemnity cannot be used to allow one innocent party to recover its defense costs from another innocent party. Accordingly, the district court's dismissal of the third-party claim was ultimately proper because no right to implied indemnity exists for defense fees and costs when the district court has dismissed the underlying claim but has not determined the fault of the third-party defendant.

## FACTS

On March 6, 2005, Marlene Garibay, her 17-year-old son, Fabian Santiago, and Fabian's adult step-uncles, Manuel and Daniel Garibay, checked into respondent/cross-appellant Primadonna Company, LLC's, hotel in Primm, Nevada. Fabian, Manuel, and Daniel spent the evening gambling and drinking alcoholic beverages on the Primadonna's premises. Daniel, who purchased the alcohol from the

hotel's liquor store, shared it with Manuel and Fabian, who became intoxicated.

Fabian, Manuel, and Daniel admit engaging in disruptive behavior on Primadonna's premises. In particular, Fabian, Manuel, and Daniel were involved in at least two altercations with other hotel guests, and otherwise disturbed guests by kicking and knocking on hotel room doors. During one of the altercations, Manuel punched another hotel guest in the face. Primadonna's security personnel intervened and, at the security officers' request, Fabian, Manuel, and Daniel agreed to leave the hotel property.

Three hotel security officers accompanied Fabian, Manuel, and Daniel to their room to gather their belongings. While waiting outside of the hotel room door while the three men had gathered their belongings, a security officer overheard one of the men tell a woman inside of the room that they had been asked to leave the hotel for fighting. Manuel testified that he told the woman, Marlene Garibay, that the three men were going to sleep in the car in the parking lot. Manuel also testified that Marlene had expressed her concern with his level of intoxication. She then exited the hotel room and spoke with the hotel security officers, telling them that Fabian, Manuel, and Daniel could not leave, and that they would stay in the room and "sleep it off." Nevertheless, the hotel security officers escorted the three men to their vehicle, which was located in the hotel's parking lot.

According to Fabian, the three men were going to leave the hotel premises and "sleep it off" in the car. Similarly, the appellate record indicates that Manuel, who did not have a valid driver's license, did not intend to drive because he believed his blood-alcohol concentration level was higher than the legal limit. Once at their vehicle, however, Manuel told Daniel that he was sober enough to drive and sat in the driver's seat. After they were seated in the vehicle, hotel security officers approached, knocked on the window, and informed the young men that they had to leave Primadonna's parking lot.

Consequently, Manuel drove the vehicle out of the Primadonna's parking lot. Mistaking a frontage road for the freeway entrance, Manuel rolled the vehicle while driving at approximately 80 miles per hour. Fabian was seriously injured in the accident, suffering extreme spinal injuries, leaving him a quadriplegic.

## PROCEDURAL HISTORY

Fabian's grandfather and guardian ad litem, appellant/cross-respondent Martin Rodriguez, filed a negligence action against Primadonna in both his individual capacity and on Fabian's behalf, seeking damages for Fabian's injuries, based on allegations that the

Primadonna's staff acted unreasonably in evicting Fabian from the premises. During the underlying proceedings, Primadonna filed a third-party complaint against Marlene, Fabian's mother, for indemnity, alleging that Primadonna was entitled to indemnification and contribution of the fees and costs incurred to defend the action because Marlene knowingly permitted Fabian, her minor child, to ride with an intoxicated driver who did not have a valid driver's license.

After the close of discovery, Primadonna filed two summary judgment motions. In its first motion for summary judgment, Primadonna argued that it had a duty and a right to evict disruptive individuals from its premises. Primadonna also contended that even though Fabian was a minor and Manuel was intoxicated, it did not owe a duty to keep Fabian on the premises or to prevent Manuel from driving. Asserting that it did not require Fabian, Manuel, and Daniel to leave by driving their own car, Primadonna maintained that it was not liable for damages related to Fabian's injuries.

In opposition, Rodriguez argued, among other things, that the Primadonna was obligated to act reasonably when evicting Fabian, Manuel, and Daniel. And because the Primadonna directed or allowed Fabian into a vehicle with an intoxicated driver, Rodriguez argued that whether the hotel complied with this duty was a question of fact for the jury.

The district court granted the motion for summary judgment, finding that Primadonna had the right and duty to evict Fabian, Manuel, and Daniel from the hotel premises and that Primadonna used reasonable force in effectuating the eviction. Because the district court entered summary judgment on Rodriguez's negligent-eviction claim, it also dismissed as moot Primadonna's counterclaim for indemnity and contribution against Marlene. Therefore, no further claims remained for the district court's adjudication.

As the prevailing party, Primadonna filed a motion for attorney fees and costs against Rodriguez, arguing that Rodriguez had brought and maintained a frivolous action. In particular, according to Primadonna, Rodriguez instituted and pursued the underlying action despite the absence of a legal duty owed to Fabian and despite clear law negating dram-shop liability in Nevada. Further, Primadonna pointed out that Rodriguez did not attempt to sue all potentially liable parties, but sued only Primadonna, the "deep pocket" defendant.

Rodriguez opposed the motion, arguing that the action is not frivolous because there are multiple factual bases upon which to ground liability, and Primadonna erroneously classified the claim as one for dram-shop liability. Ultimately, the district court denied the

motion for attorney fees and costs, finding that the action was based on negligent eviction and not based on the dram-shop liability bar. The district court also found that no legal authority supported Primadonna's contention that the action was frivolous because Rodriguez chose to sue only Primadonna.

Primadonna filed a second motion for summary judgment on its third-party claim for indemnity for its defense fees and costs against Marlene. Primadonna argued that Marlene had an affirmative duty to protect her child from harm and that she breached that duty when she knowingly allowed him to leave the hotel premises with a drunk driver who did not have a valid driver's license. The district court denied Primadonna's motion, finding that any claim for indemnity Primadonna had against Marlene was moot in light of the summary judgment entered in favor of Primadonna on Rodriguez's negligence claims.

Rodriguez appeals as an individual and as the guardian ad litem of Fabian Santiago, challenging the summary judgment dismissing the negligence claims. Primadonna cross-appeals, challenging the district court's denial of its motion for attorney fees and costs against Rodriguez and the dismissal of its claims for indemnity and contribution from Marlene for defense fees and costs.

## DISCUSSION

### Standard of review

We review orders granting summary judgment de novo. *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005). Summary judgment was appropriate if the pleadings and other evidence on file, viewed in a light most favorable to the nonmoving party, demonstrated that no genuine issue of material fact remained in dispute and that the moving party was entitled to judgment as a matter of law. *Id.* General allegations supported with conclusory statements fail to create issues of fact. *Yeager v. Harrah's Club, Inc.*, 111 Nev. 830, 833, 897 P.2d 1093, 1094-95 (1995).

This court is reluctant to affirm summary judgment in negligence cases because negligence is ordinarily a question of fact for the jury. *Butler v. Bayer*, 123 Nev. 450, 461, 168 P.3d 1055, 1063 (2007). However, a defendant is entitled to summary judgment if the defendant is able to show that one of the elements of the plaintiff's prima facie case is " 'clearly lacking as a matter of law.' " *Id.* (quoting *Scialabba v. Brandise Constr. Co.*, 112 Nev. 965, 968, 921 P.2d 928, 930 (1996)). Thus, because the question of whether the defendant owes the plaintiff a duty of care is a question of law, if this court determines that no duty exists, it will affirm summary judgment. *Id.*

*Primadonna is not liable for Fabian's injuries on a theory of negligent eviction*

On appeal, Rodriguez argues that, as a hotel proprietor, Primadonna owed Fabian a duty to evict him from the premises in a manner reasonable under the circumstances. Thus, Rodriguez argues that the district court erred in entering summary judgment because a genuine issue of material fact exists as to whether Primadonna evicted Fabian in a manner that was reasonable in light of his intoxication and his step-uncle's apparent intent to drive while intoxicated. Primadonna contends that it was entitled to evict Fabian and his step-uncles because of their disruptive behavior and that the method of eviction was reasonable. Therefore, the issue in this appeal is whether Primadonna owed an affirmative duty to ensure Fabian's safety after the eviction process concluded.

We begin by emphasizing that hotel proprietors have the statutory right to evict from the premises anyone who acts in a disorderly manner or who causes a public disturbance in or upon the premises. NRS 651.020.[1] In addition, it is well settled in Nevada that commercial liquor vendors, including hotel proprietors, cannot be held liable for damages related to any injuries caused by the intoxicated patron, which are sustained by either the intoxicated patron or a third party. *Hamm v. Carson City Nugget, Inc.*, 85 Nev. 99, 101, 450 P.2d 358, 359 (1969); *Snyder v. Viani*, 110 Nev. 1339, 1342-43, 885 P.2d 610, 612-13 (1994). This rule applies equally when the intoxicated patron is a minor. *Hinegardner v. Marcor Resorts*, 108 Nev. 1091, 1096, 844 P.2d 800, 803 (1992). In other words, Nevada subscribes to the rationale underlying the nonliability principle—that individuals, drunk or sober, are responsible for their torts. *See id.* at 1093, 844 P.2d at 802.

Therefore, based on these principles, we conclude that when a hotel proprietor rightly evicts a disorderly, intoxicated patron, the hotel proprietor is not liable for any torts that an evicted patron commits after he or she is evicted that result in injury.

Nevertheless, we acknowledge that when evicting a person from the premises, a proprietor has a duty to act reasonably under the circumstances. *Billingsley v. Stockmen's Hotel*, 111 Nev. 1033, 1037, 901 P.2d 141, 144 (1995). In *Billingsley*, this court reversed the district court's grant of summary judgment after we concluded that a genuine issue of material fact existed as to whether the hotel's se-

---

[1]NRS 651.005 expands "premises," as used in NRS 651.020, to include parking lots.

curity personnel acted reasonably in evicting the plaintiff, who was intoxicated and belligerent. 111 Nev. at 1037, 901 P.2d at 144. In that case, while being led by security personnel backwards by his lapels through the doors, the plaintiff stumbled, fell, and broke his ankle. *Id.* at 1035-36, 901 P.2d at 143. After the plaintiff stumbled, security personnel placed the patron in a "choke hold." *Id.* at 1037-38, 901 P.2d at 144-45. The *Billingsley* court determined that the hotel owed a duty to the plaintiff to act reasonably when evicting a patron from the premises, and genuine issues of material facts existed as to whether the force used by the hotel to evict the patron was reasonable. *Id.* at 1038, 901 P.2d at 145.

Today, however, we conclude that *Billingsley* is limited to its facts. Although a hotel proprietor has the duty to effectuate a reasonable eviction, the proprietor does not have the duty to prevent injuries caused by the intoxicated patron that are sustained either by the patron or by third parties after the eviction has been executed. To that end, and in accordance with the principles underlying Nevada's rejection of dram-shop liability, we conclude that so long as a proprietor does not use unreasonable force in evicting a patron, the hotel proprietor is not required to consider a patron's level of intoxication in order to prevent speculative injuries that could occur off the proprietor's premises. *See Mills v. Continental Parking Corp.*, 86 Nev. 724, 725-26, 475 P.2d 673, 674 (1970) (applying the policies underlying the rejection of dram-shop liability to conclude that imposing civil liability on a parking garage attendant for failing to prevent an intoxicated driver from leaving the premises would lead to unimaginable consequences).

Other jurisdictions that reject dram-shop liability have come to similar conclusions when a proprietor evicts a patron for disruptive behavior and the patron later sustains injuries off the proprietor's premises. *See McCall v. Villa Pizza, Inc.*, 636 A.2d 912, 912-15 (Del. 1994); *DeBolt v. Kragen Auto Supply, Inc.*, 227 Cal. Rptr. 258, 260-61 (Ct. App. 1986). The Delaware Supreme Court, in *McCall, Inc.*, declined to allow the appellant to circumvent the absence of dram-shop liability by alleging negligence for the proprietor's failure to provide transportation to an evicted patron, despite the proprietor's knowledge that the patron was highly intoxicated and would attempt to operate a motor vehicle. 636 A.2d at 915. Although the plaintiff alleged that the proprietor's negligence was not related to its serving of alcohol, but rather, its removal of him from the premises without providing safe transportation, the *McCall* court stressed that the proprietor did not have the duty to prevent injury that was sustained off the proprietor's premises. *Id.* at 914.

Similarly, a California Court of Appeal affirmed a judgment of dismissal by concluding that a social host did not have a duty to pro-

vide alternative and safer means of transportation to an intoxicated social guest who was ejected from the premises. *DeBolt*, 227 Cal. Rptr. at 260-61. In *DeBolt*, after a social host ordered an intoxicated and disorderly guest to leave a party, the guest collided with a motorcyclist, killing the driver. *Id.* at 258-59. The heirs of the deceased brought a negligence action against the social host, alleging that the host was liable for demanding that the guest leave the premises knowing that the guest was intoxicated and would not be able to safely drive. The *DeBolt* court reasoned that imposing liability on the host would defeat the clear common law rules immunizing social hosts from liability for the consequences of serving alcohol. *Id.* at 261. And the court recognized that if it imposed liability, it would open the doors for plaintiffs to draft complaints for injuries and deaths that are ultimately caused by the consumption of alcohol. *Id.*[2] We conclude that the reasoning expressed in *DeBolt* is persuasive because it is consistent with this court's jurisprudence in *Hamm*, *Snyder*, and *Hinegardner*.

In this case, Primadonna had the statutory right to evict Fabian and the other young men from the premises based on their disorderly conduct. However, because Nevada commercial alcohol vendors are not liable for injuries sustained by intoxicated patrons, Primadonna did not have a duty to ensure safe transportation for the young men, keep Fabian on the premises, or otherwise prevent injuries subsequent to their eviction. When Primadonna security officers asked the three men to leave the premises, the three men agreed, and, in ensuring that the men complied, the security officers did not act forcefully or personally cause injury to the men during the eviction. Although the Primadonna asked the men to leave while the men were sitting in their vehicle, Manuel drove at his own election, and likewise, Fabian chose to drive with Manuel. At the moment the men left the parking lot, the eviction had been effectuated, and the Primadonna had no further duty to ensure Fabian's safety. Therefore, although the Primadonna may have known that Fabian's step-uncle was intoxicated and could not safely drive, we conclude, as a matter of law, that Primadonna did not have the duty to arrange safer transportation, prevent an intoxicated driver from driving, or prevent Fabian, a passenger, from riding with a drunk driver.

In so concluding, we note that it would be contrary to existing authority for this court to hold otherwise and require a proprietor to monitor the intoxication level or other factors related to patrons who elect to drive while intoxicated or who engage in other dangerous activity after they are evicted. Therefore, absent a legal duty to pro-

---

[2] Our reliance on *DeBolt* here does not constitute an interpretation of NRS 41.1305 and should not be relied upon as such.

tect patrons after a reasonable eviction, there can be no actionable claim for negligence.[3] *Merluzzi v. Larson*, 96 Nev. 409, 412-13, 610 P.2d 739, 741-42 (1980), *overruled on other grounds by Smith v. Clough*, 106 Nev. 568, 570, 796 P.2d 592, 594 (1990). Therefore, we perceive no error in the district court's order granting summary judgment in favor of Primadonna.

### Primadonna is not entitled to attorney fees from Rodriguez

Primadonna argues that the district court abused its discretion by denying its motion for attorney fees and costs against Rodriguez. According to Primadonna, Rodriguez's action was frivolous because he sued only the ''deep pocket'' defendant but did not file suit against Fabian's mother (Marlene) or Manuel, the intoxicated driver. Primadonna further contends that Rodriguez pursued a frivolous claim in light of clear statutory law permitting the eviction of disruptive patrons and caselaw negating liability for commercial vendors of liquor. We disagree with Primadonna.

This court reviews an attorney fees decision for an abuse of discretion. *Baldonado v. Wynn Las Vegas*, 124 Nev. 951, 967, 194 P.3d 96, 106 (2008). A district court may award attorney fees to a prevailing party when it finds that the opposing party brought or maintained a claim without reasonable grounds. NRS 18.010(2)(b). For purposes of NRS 18.010(2)(b), a claim is frivolous or groundless if there is no credible evidence to support it. *Semenza v. Caughlin Crafted Homes*, 111 Nev. 1089, 1095, 901 P.2d 684, 687 (1995); *Allianz Ins. Co. v. Gagnon*, 109 Nev. 990, 996, 860 P.2d 720, 724 (1993).

Initially, Primadonna cites no authority and we have found none to support its argument that a litigant's tactical decision to sue one alleged tortfeasor and not others renders Rodriguez's claim frivolous. Under NRS 18.010(2)(b), we consider whether the claim pursued by the losing party against the prevailing party was based on reasonable grounds.

Here, we conclude that Rodriguez's civil action presented a novel issue in Nevada law concerning the potential expansion of common law liability to hotel proprietors for injuries sustained by an intoxicated minor guest after he is evicted from the premises. Therefore,

---

[3]In addition, Primadonna's sale of liquor to Fabian, Manuel, or Daniel does not constitute the proximate cause of Fabian's injuries. It is well-settled that when a patron sustains injuries due to his intoxication, the proximate cause of those injuries is the consumption of liquor and not the sale. *Hamm v. Carson City Nugget, Inc.*, 85 Nev. 99, 101, 450 P.2d 358, 359 (1969).

we conclude that the district court properly denied Primadonna's motion for attorney fees.

*Primadonna is not entitled to indemnification from Marlene because the potential indemnitor's liability has not been established*

Primadonna also asserts that the district court erred as a matter of law by denying its summary judgment motion in the indemnity and contribution action it filed against Marlene, a third-party defendant. The district court determined that the indemnity action was moot because summary judgment was previously granted on the underlying negligence claim and Primadonna was not required to make a payment for damages. Primadonna contends that it is entitled to indemnification and contribution for defense fees and costs because Marlene knowingly permitted Fabian, her minor child, to ride with an intoxicated driver who did not have a valid driver's license. Thus, according to Primadonna, Marlene is primarily responsible for Fabian's injuries and should be required to reimburse Primadonna for attorney fees and costs associated with defending Rodriguez's action.

Although Marlene did not file a brief in this cross-appeal, Rodriguez argues that because the district court granted summary judgment to Primadonna, it has no liability for damages and cannot seek indemnification. The question of whether a party for whom summary judgment has been entered may be entitled to indemnification for attorney fees and costs for defending the action is an issue of first impression in Nevada.

Noncontractual or implied indemnity is an equitable remedy that allows a defendant to seek recovery from other potential tortfeasors whose negligence primarily caused the injured party's harm. *Doctors Company v. Vincent*, 120 Nev. 644, 650, 98 P.3d 681, 686 (2004). ''At the heart of the doctrine is the premise that the person seeking to assert implied indemnity—the indemnitee—has been required to pay damages caused by a third party—the indemnitor.'' *Harvest Capital v. WV Dept. of Energy*, 560 S.E.2d 509, 513 (W. Va. 2002). Implied indemnification has been developed by the courts to address the unfairness which results when one party, who has committed no independent wrong, is held liable for the loss of a plaintiff caused by another party. *Id.* at 512.

Generally, the remedy is available after the defendant has extinguished its own liability through settlement or by paying a judgment.

*Doctors Company*, 120 Nev. at 651, 98 P.3d at 686. This court has stated that "a cause of action for indemnity . . . accrues when payment has been made." *Aetna Casualty & Surety v. Aztec Plumbing*, 106 Nev. 474, 476, 796 P.2d 227, 229 (1990) (citing *Southern Maryland Oil Co. v. Texas Co.*, 203 F. Supp. 449, 452 (D. Md. 1962)). A claimant seeking equitable indemnity must plead and prove that: (1) it has discharged a legal obligation owed to a third party; (2) the party from whom it seeks liability also was liable to the third party; and (3) as between the claimant and the party from whom it seeks indemnity, the obligation ought to be discharged by the latter. 41 Am. Jur. 2d *Indemnity* § 20 (2005).

We previously recognized that there is a split of authority whether a party entitled to indemnity may also recover from the indemnitor reasonable attorney fees and costs incurred in defending the primary tort action. *Piedmont Equip. Co. v. Eberhand Mfg.*, 99 Nev. 523, 526, 665 P.2d 256, 258 (1983). We determined that a party is entitled to recover through indemnification at least some of the attorney fees and court costs incurred in defending an action. *Id.* at 529, 665 P.2d at 260. "However, the right to fees and costs remains limited." *Id.* We restricted the recovery of attorney fees and costs through indemnification to those "fees and expenses attributable to the making of defenses which are not primarily directed toward rebutting charges of active negligence." *Id.*

Additionally, we also required some nexus or relationship between the indemnitee and indemnitor. *Id.* at 528, 665 P.2d. at 259. We adopted the warning found in *Pender v. Skillcraft Industries, Inc.*, 358 So. 2d 45, 47 (Fla. Dist. Ct. App. 1978), that implied indemnification " 'should not be construed as permission to open a floodgate for cross-claims seeking indemnification where there is no connection between the cross-claimant and the party from whom indemnification is sought.' " *Piedmont Equip. Co.*, 99 Nev. at 527-28, 665 P.2d at 259 (quoting *Pender*, 358 So. 2d at 47).

Our previous opinions concerning implied indemnification addressed appeals in which a trial had been conducted on the merits and apportioned liability to each party. However, we have not addressed the issue of indemnity when the underlying liability claim is resolved through summary judgment without a finding of fault on behalf of the third-party defendant from whom the claimant seeks indemnity.

On this point, the West Virginia Supreme Court has provided persuasive reasoning that comports with our general authority concerning implied indemnity. In particular, the West Virginia Supreme Court, in *Harvest Capital*, held that a claimant is entitled to indemnity from a third-party defendant for attorney fees and costs only after it is established that the plaintiff in the original action has sustained an injury for which the third-party defendant is responsible. 560 S.E.2d at 514. " '[T]he fact that the party charged may be in-

nocent of the claimed wrong and can successfully defend against such a suit does not entitle [the party] to pass the burden on to some equally innocent [ ] party.' " *Id.* (quoting *Bettilyon Const. Co. v. State Road Commission*, 437 P.2d 449, 450 (Utah 1968)). Thus, to prevent one innocent party from passing its burden on to an equally innocent party, a prerequisite to the recovery of attorney fees from a potential indemnitor is a finding of liability to the plaintiff by the potential indemnitor on the underlying claim. *Harvest Capital*, 560 S.E.2d at 514. Therefore, when a district court has disposed of the underlying liability claim, but has not established that the potential indemnitor was at fault, no right to equitable indemnity exists. *Id.*

In this case, the district court entered summary judgment in favor of the defendant, Primadonna, on the underlying negligence claim and subsequently concluded that the indemnity action was rendered moot by the termination of the underlying claim. Although we agree with the ultimate decision of the district court and conclude that the indemnity action should have been dismissed, we do not agree that it was rendered moot simply by granting summary judgment on the underlying negligence claim. Rather, the indemnity claim should have been dismissed because Marlene has not been found liable for the injuries sustained by Fabian. It is an established principle of implied indemnity that the potential indemnitor must be liable for the injuries to the plaintiff. *Id.*; 41 Am. Jur. 2d *Indemnity* § 20 (2005). We see no compelling reason to transfer the costs of defending the claim from one innocent party to another without an adjudication of liability against the indemnitor. *Harvest Capital*, 560 S.E.2d at 514.

Furthermore, there exists no nexus or special relationship between the parties that would allow the application of implied indemnification in this case. *Piedmont Equip. Co.*, 99 Nev. at 528, 665 P.2d at 259. Implied indemnification is not a license to assert a cross-claim against any third party in hope of alleviating the burden of costs associated with defending litigation. *Id.* at 527-28, 665 P.2d at 259. Primadonna failed to demonstrate any nexus or relationship with Marlene, and we see none.

We therefore conclude that the district court's order denying the motion for summary judgment was correct although not because the motion was moot. A district court's correct result will not be disturbed on appeal even though its decision was reached by relying on different grounds. *St. James Village, Inc. v. Cunningham*, 125 Nev. 211, 221, 210 P.3d 190, 196 (2009); *Hotel Riviera, Inc. v. Torres*, 97 Nev. 399, 403, 632 P.2d 1155, 1158 (1981). Rather, we conclude that the motion for summary judgment was properly denied in this case because implied indemnification may not be asserted without determined liability of the third party to the injured party and the

showing of a nexus or special relationship between the indemnitee and proposed indemnitor. Therefore, we conclude that the district court's denial of Primadonna's motion for summary judgment was proper.

## CONCLUSION

In accordance with the common law rule that a proprietor's sale of alcohol is not the proximate cause of an intoxicated plaintiff's injuries that are sustained after a rightful and reasonable eviction, we conclude that a proprietor does not, as a matter of law, have an affirmative duty to prevent injury to an intoxicated patron subsequent to an eviction. Therefore, we affirm the district court's summary judgment in favor of Primadonna on Rodriguez's negligence claim. Next, because we conclude that Rodriguez's claim was not frivolous, we affirm the district court's decision denying Primadonna's motion to recover attorney fees and costs against Rodriguez. And finally, although we conclude that Primadonna's motion for summary judgment for indemnification against Marlene is not moot, we affirm the district court's dismissal of the motion because implied indemnity is not applicable to this case.

PARRAGUIRRE and DOUGLAS, JJ., concur.