## IN THE SUPREME COURT OF THE STATE OF NEVADA

CHICAGO TITLE OF NEVADA, INC., A
NEVADA CORPORATION; AND
UNITED TITLE OF NEVADA, INC., A
NEVADA CORPORATION,
Appellants,
vs.
CHARTERED HOLDINGS, INC.
PROFIT SHARING PLAN FOR THE
BENEFIT OF CAROL RITTER; CAROL
RITTER AS TRUSTEE; AND
CHARTERED REALTY PARTNERS IV,
L.P., A NEVADA LIMITED
PARTNERSHIP,
Respondents.

No. 79180

FILED

MAY 2 4 2021

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

CHICAGO TITLE OF NEVADA, INC., A
NEVADA CORPORATION; AND
UNITED TITLE OF NEVADA, INC., A
NEVADA CORPORATION,
Appellants,
vs.
CHARTERED HOLDINGS, INC.
PROFIT SHARING PLAN FOR THE
BENEFIT OF CAROL RITTER; CAROL
RITTER AS TRUSTEE; AND
CHARTERED REALTY PARTNERS IV,
L.P., A NEVADA LIMITED
PARTNERSHIP,
Respondents.

No. 80116

### ORDER AFFIRMING IN PART, REVERSING IN PART AND REMANDING

These are consolidated appeals from district court orders in a third-party contract action that arose from a quiet-title action. Eighth Judicial District Court, Clark County; Elizabeth Goff Gonzalez, Judge.

21-14786

Appellants argue that the district court erred by concluding that (1) they violated NRS 107.078(3); (2) respondents proved special damages for their breach-of-contract claim; (3) respondents' claims were timely; and (4) respondents were entitled to equitable indemnity.[1] We agree at least in part with each of appellants' arguments, so we affirm in part, reverse in part, and remand to the district court.

*The district court erred by concluding that appellants violated NRS 107.078(3)*

Appellants argue that the district court erred by concluding that they violated NRS 107.078(3).[2] They argue that a trustee has no duty to record a reconveyance under NRS 107.078(2) until the beneficiary requests reconveyance, and the district court found that Chartered Pension (beneficiary) never requested reconveyance under NRS 107.078(1). They argue that the district court's conclusion that Chartered Pension was nonetheless excused from requesting reconveyance erroneously "nullif[ied]" NRS 107.078(1)'s express requirement that the beneficiary request reconveyance.

Respondents answer that the district court correctly interpreted NRS 107.078 with respect to the additional step in the parties' *agreement* that United Title (trustee) would request payoff, whereupon

---

[1]We do not address other issues that appellants raise because doing so is unnecessary to resolve this appeal.

[2]As respondents did in their third-party complaint, the district court cited NRS 107.077, which addresses *full* discharges and reconveyances, instead of NRS 107.078, which is substantively identical but addresses *partial* discharges and reconveyances. But the loan here was for Chartered Realty's development of 55 lots, and Chartered Realty was to partially repay the loan with each sale, so NRS 107.078 was the applicable statute.

Chartered Realty (grantor) would provide the payoff amount and Chartered Pension would request reconveyance.[3]

We review a district court's legal conclusions following a bench trial de novo. *Vegas United Inv. Series 105, Inc. v. Celtic Bank Corp.*, 135 Nev. 456, 458, 453 P.3d 1229, 1231 (2019). NRS 107.078(1) provides that "within 21 calendar days after receiving [written] notice that the debt" has been paid off, "the beneficiary shall, . . . deliver to the trustee a properly executed request . . . [to] reconvey[]." NRS 107.078(2) provides that "[w]ithin 45 calendar days after" the debt has been paid off "and a properly executed request . . . [to] reconvey[] is received by the trustee, the trustee shall cause to be recorded a . . . reconveyance of the deed of trust." Finally, NRS 107.078(3) provides that the deed of trust's beneficiary is liable to the grantor "[i]f the beneficiary fails to deliver to the trustee a properly executed request for a partial reconveyance pursuant to subsection 1," and that the trustee is liable to the grantor "if the trustee fails to cause to be recorded a partial reconveyance of the deed of trust pursuant to subsection 2."

---

[3]Respondents offer several other arguments that are significantly less persuasive. First, they argue that the district court found that they *did* request reconveyance, but they quote the district court's finding about the parties' *intended* course of performance under their agreement and omit the district court's finding about what *actually* happened: "Chartered [Pension] fail[ed] to make a formal reconveyance request." Second, they argue that NRS Chapter 107 permits alternative procedures, but they cite NRS 107.079(7), which indeed allows alternative procedures but only in limited circumstances, none of which apply here. As we discuss below, the dissent addresses both of these arguments at face value, but closer inspection reveals that both are flawed and do not accurately represent the district court's findings or the law. And third, respondents argue that United Title could have recorded a reconveyance without a request, but they cite NRS 107.077(4), which provides that a title insurer (which United Title was not) may do so after payoff.

The district court concluded that United Title violated NRS 107.078(3) "by failing to properly make a payoff request and assure reconveyance of the 1717 DoT for each of the Encumbered Lots," and "by failing to cause to be recorded a partial reconveyance of the 1717 DoT for each of the Encumbered Lots." Although NRS 107.078(2) does not require a trustee to reconvey until the beneficiary has requested reconveyance under NRS 107.078(1), the district court reasoned that Chartered Pension was excused from fulfilling this express, statutory requirement "[g]iven the procedure utilized by [United Title's] escrow department to identify liens and make pay off requests." It explained that United Title's escrow department "would . . . send a payoff request [only] when an encumbrance appeared on the preliminary title report," and, because United Title apparently failed to identify the encumbrances on the lots at issue, it never requested payoff from Chartered Realty, so Chartered Pension never requested reconveyance.

Like respondents, the dissent cites the district court's preliminary findings about the parties' *intended* performance under their agreement as if it were what actually happened, in which case this appeal would not be before us. But, in fact, the district court found that the parties did not perform as they intended. It repeatedly found that United Title failed to identify the encumbrances and request payoff. And, because United Title never requested payoff, Chartered Pension never had a reason to request reconveyance or any notice that it should do so. This is precisely why the district court concluded that "Chartered [Pension]'s failure to make a formal reconveyance request" was "excused," and that conclusion is simply impossible to reconcile with the dissent's claim that the district court also found that Chartered Pension requested reconveyance.

But, regardless of its findings, the district court's conclusions lack any basis in NRS 107.078. First, NRS 107.078(3) requires nothing of any party, but simply provides that the beneficiary and/or trustee may be liable to the grantor for violating subsections (1) or (2). So, as a matter of law, United Title could not have violated NRS 107.078(3).

Further, subsections (1) and (2) are also inapplicable. First, neither subsection requires a trustee to "make a payoff request and assure reconveyance," so United Title could not have violated either subsection by failing to do those things. It may have breached its *contract* with Chartered Realty by failing to do those things, but NRS 107.078 imposes no such duties. Second, subsection (2) requires a trustee to "cause to be recorded a . . . reconveyance" *only after it receives a request that it do so*. And, as the district court found, Chartered Pension never requested reconveyance. Again, under its *contract* with Chartered Realty, United Title may have been responsible for Chartered Pension's failure to request reconveyance because United Title apparently never requested payoff, but that would be a potential breach of contract—not a violation of NRS 107.078, which imposes a duty to record a reconveyance *only upon request*. So the district court erred by concluding that United Title violated NRS 107.078.

Finally, the dissent cites NRS 107.079(7), which provides that "[t]his section shall not be deemed to create an exclusive procedure for the reconveyance of a deed of trust . . . and shall not affect any other procedures, whether or not such procedures are set forth in statute, for the conveyance of a deed of trust . . . ." Without further context, this appears to support the district court's conclusion that appellants' failure to request payoff constituted a breach of NRS 107.078 despite the fact that NRS 107.078 imposes no such obligation. But, like respondents, the dissent overlooks that "[t]his section" applies only when "the current beneficiary of record

cannot be located after diligent search . . . or refuses to execute and deliver a proper request to reconvey." NRS 107.079(1). Those circumstances are plainly inapplicable here.

*The district court erred by concluding that respondents need not have proven their attorney fees as special damages at trial*

Appellants argue that respondents failed to prove their breach-of-contract claim because they did not prove special damages in the form of attorney fees *at trial*. Respondents answer that appellants "misstate[ ]" the relevant caselaw. Appellants reply that respondents misunderstand the caselaw and concede that they did not prove special damages at trial.

We review an award of attorney fees as special damages de novo. *Pardee Homes of Nev. v. Wolfram*, 135 Nev. 173, 176, 444 P.3d 423, 426 (2019). "Nevada law requires the plaintiff in a breach of contract action to show (1) the existence of a valid contract, (2) a breach by the defendant, and (3) damage as a result of the breach." *Saini v. Int'l Game Tech.*, 434 F. Supp. 2d 913, 919-20 (D. Nev. 2006). A post-trial hearing "is not appropriate for litigating attorney fees as damages. When attorney fees are alleged as damages, they must be specifically pleaded and proven by competent evidence at trial, just as any other element of damages." *Sandy Valley Assocs. v. Sky Ranch Estates Owners Ass'n*, 117 Nev. 948, 960, 35 P.3d 964, 971 (2001), *receded from on other grounds by Horgan v. Felton*, 123 Nev. 577, 170 P.3d 982 (2007); *see also Pardee Homes*, 135 Nev. at 177, 444 P.3d at 426 (reaffirming that attorney fees as special damages must be proven *at trial*).

After respondents presented their case in chief, appellants moved under NRCP 52(c) to limit damages for which "there ha[d] been no evidence presented," which included the attorney-fees special damages. But respondents answered that *Sandy Valley* requires only that attorney-fees

special damages be "a proximate result of the consequence of the breach of con[tract]." They argued that that is exactly what they alleged in their complaint, but they did not dispute that they had failed to *prove* those damages at trial. The district court summarily denied appellants' motion.

And, at the end of trial, the district court concluded that the only damages respondents suffered were their attorney-fees special damages. It agreed with respondents that they need not have proven the attorney fees at trial, instead explaining that it would determine the amount of attorney fees at the usual post-trial hearing.

Appellants are correct. Although respondents may have proven their attorney-fee damages *after* trial, they never proved them *at* trial. Because a litigant seeking to prove attorney fees as special damages must do so *at* trial, as we held in *Sandy Valley* and recently reaffirmed in *Pardee Homes*, the district court erred by concluding that respondents were entitled to special damages despite failing to prove them *at* trial. And, because the district court found that respondents suffered no other damages, they could not have proven their breach-of-contract claim, *see Saini*, 434 F. Supp. 2d at 919-20, so the district court likewise erred by concluding that they had.

*The district court erred by concluding that respondents' first covenant claim was timely under the discovery rule*

Appellants argue that the statute of limitations barred three of the four claims on which respondents prevailed. They argue that (1) the statutory claims expired no later than 2004, (2) the contract and covenant claims expired no later than 2007,[4] and (3) the discovery rule does not apply

---

[4]Because the NRS 107.078 and breach-of-contract rulings are reversible for the reasons we discussed above, in this section, we address only the covenant claims and, insofar as it is inextricable from the first covenant claim, the breach-of-contract claim.

to toll the statute of limitations. They reason that, because respondents must have requested reconveyance in order for United Title to have recorded reconveyance, and both respondents, who have the same principal in Ward Ritter, unavoidably knew that one had paid off its debt to the other by 2001, respondents *reasonably should have discovered* that United Title had not requested payoffs, and Chartered Realty had not in turn submitted the payoff amounts to United Title, and Chartered Pension had not in turn requested reconveyances.

Respondents answer that they did not know that United Title failed to record reconveyances and that nothing in the record proves that they knew or should have known.

Appellants reply that respondents still fail to address whether they *reasonably should have discovered* that United Title failed to record reconveyances.

"When the facts are uncontroverted . . . , the application of the statute of limitations is a question of law that this court reviews de novo." *Holcomb Condo. Homeowners' Ass'n, Inc. v. Stewart Venture, LLC*, 129 Nev. 181, 186-87, 300 P.3d 124, 128 (2013). "[A] cause of action accrues when the wrong occurs and a party sustains injuries for which relief could be sought." *Petersen v. Bruen*, 106 Nev. 271, 274, 792 P.2d 18, 20 (1990). But the discovery rule delays accrual "until the injured party discovers *or reasonably should have discovered* facts supporting a cause of action." *Id.* (emphasis added).

The relevant facts in the covenant claims are uncontroverted, and a covenant claim is "[a]n action upon a contract," so it expires in six years. NRS 11.190(1)(b). But the district court listed two breaches that occurred more than a decade apart.

Supreme Court
of
Nevada

(O) 1947A

First, it concluded that United Title breached the covenant "by acting in a way contrary to the purpose and spirit of the Agreement" with Chartered Realty. This is simply a reframing of the breach-of-contract injury as a covenant injury, so this first covenant injury occurred with the alleged breach of contract no later than 2001, when Chartered Realty finished repaying the loan.

Those claims also *accrued* in 2001 because the discovery rule did not apply. As appellants argue, and the district court apparently did not consider, respondents at least *reasonably should have discovered* the facts supporting the breach-of-contract claim and the first covenant claim in 2001. Although the district court concluded that respondents were not aware of the facts supporting those claims until 2016, respondents and their common principal, Ritter, were unavoidably aware that Chartered Realty had paid off its debt to Chartered Pension by 2001, and that Chartered Pension had not requested reconveyance or been prompted to do so under the agreement with United Title.

Having that knowledge, respondents also knew or at least *reasonably should have discovered* the facts supporting the breach-of-contract claim and the first covenant claim: United Title's failure to request payoff, which would have cued Chartered Pension to request reconveyance under the agreement. So the discovery rule did not apply. Because it did not apply, those claims accrued in 2001 and expired six years later in 2007, and the district court erred by concluding otherwise.

But the district court also concluded that Chicago Title breached the covenant by "fail[ing] to properly handle the original inquiry from" a successor in interest whom Ritter referred to Chicago Title. That injury occurred in June 2016, so the claim accrued on that ground no earlier than June 2016 and will expire no earlier than June 2022.

Because the second claim has not yet expired, the district court did not err on that ground. And, because appellants do not otherwise challenge the second claim, we affirm in part on that ground.[5]

*The district court erred by concluding that respondents were entitled to equitable indemnity for their attorney fees in this action*

Finally, appellants argue that the district court erred by concluding that respondents committed "no independent wrong" and awarding equitable indemnity. They argue that respondents "engaged in deliberate and intentional wrongdoing." They cite the district court's finding that Ritter refused the request from the Money Source, Inc. (TMSI), to reconvey without payment of his expected legal fees. Alternatively, they argue that the unclean-hands doctrine also precludes equitable indemnity.

Respondents answer that the TMSI action was the result of appellants' failures under the agreement. They argue that they were not

---

[5]As we explain below, we remand this matter to this district court with instructions to recalculate attorney fees and any remaining damages. Because the amount and character of those damages are unclear, they warrant some discussion here. The district court found that respondents suffered $51,000 in damages for appellants' *singular* "breach of the contractual covenant of good faith and fair dealing," despite finding two breaches on separate factual bases. Whether it intended to refer to both breaches as one and, if not, which of the two caused $51,000 in damages is likewise unclear. The district court also found that respondents were entitled to those damages "plus . . . reasonable attorney's fees and costs," despite finding earlier in its order that "[t]he only evidence that [respondents] suffered any actual damages is related to attorney's fees and costs incurred in this action." Whether it referred only to the breach-of-contract damages in that earlier finding is unclear. If so, then the district court should recalculate the damages for the claims on appeal to include only whatever amount applies to the second covenant claim. If not, then the district court should exclude those damages from its calculation because respondents failed to prove attorney-fees special damages at trial.

negligent. They do not address Ritter's refusal to reconvey or whether it may have constituted wrongdoing.

We review an equitable-indemnity determination de novo. *Otak Nev., LLC v. Eighth Judicial Dist. Court*, 129 Nev. 799, 807-08, 312 P.3d 491, 497 (2013). "Equitable indemnity . . . 'allows a defendant to seek recovery from other potential tortfeasors,' [and] is generally available to remedy the situation in which the defendant, 'who has committed no independent wrong, is held liable for the loss of a plaintiff caused by another party.'" *Pack v. LaTourette*, 128 Nev. 264, 268, 277 P.3d 1246, 1248-49 (2012) (quoting *Rodriguez v. Primadonna Co.*, 125 Nev. 578, 589, 216 P.3d 793, 801 (2009)).

The district court found that, although Chartered Pension "may also have been able to correct the problem created by United Title," it committed "no independent wrong." So the district court concluded that respondents were "entitled to equitable indemnity under the agreement for all reasonable attorney's fees and costs incurred in connection with the prosecution of this action."[6]

---

[6]The district court's order and the arguments on appeal seem to presume that equitable indemnity allows a plaintiff to recover not only secondary damages (in this case, the attorney fees that respondents incurred in defending against the TMSI complaint), but also *primary* damages (in this case, attorney fees that respondents incurred in litigating the third-party complaint whence this appeal directly arises). But it allows recovery of *only secondary* damages. *See Rodriguez*, 125 Nev. at 589, 216 P.3d at 801 ("At the heart of the doctrine is the premise that the person seeking to assert implied indemnity—the indemnitee—has been required to pay damages caused by a third party—the indemnitor." (quoting *Harvest Capital v. WV Dep't of Energy*, 560 S.E.2d 509, 513 (W. Va. 2002))). In any event, this apparent misapprehension seems to have had no practical effect on the district court's order because it had already awarded attorney fees on ordinary prevailing-party grounds and as special damages in the breach-

Appellants challenge only the district court's conclusion that Ritter's refusal to reconvey without compensation for his expected attorney fees did not constitute wrongdoing. But the only authority they invoke, NRS 107.028(4)(b), merely provides that a beneficiary *may* substitute and reconvey. So Ritter, lacking any *duty* to reconvey, did nothing *per se* wrong by refusing to reconvey. And, because appellants cite no other grounds for concluding that his refusal constituted wrongdoing, they fail to prove that the district court's award of equitable indemnity, insofar as it was only for respondents' attorney fees in the TMSI action, was erroneous.

For the foregoing reasons, we

ORDER the judgment of the district court AFFIRMED IN PART AND REVERSED IN PART AND REMAND this matter to the district court for proceedings consistent with this order.

_____, J.
Parraguirre

_____, J.
Stiglich

SILVER, J., dissenting:

The district court found that the standard and customary practice for "exclusive escrow and title services" for this sale-out project was

---

of-contract claim, so appellants effectively indemnified respondents only for their fees in the TMSI action, which the district court presumably included in the award. We note this simply for the district court's consideration in its recalculation of the fees and costs on remand.

SUPREME COURT
OF
NEVADA

(O) 1947A

for United Title to prepare and process *all of the documents needed for closing and transfer of title to buyers*, including, but not limited to, escrow instructions, closing statements, transfer statements, and payoff demands. United Title would then send all necessary deeds, affidavits, payoff demands, and other required closing documentation to Chartered Realty and each of the affiliated lenders for execution and redelivery to United Title, for each of the individual lots closing, including those for individual homes on the lots. United Title was solely responsible for all escrow, closing, requests for partial reconveyance, partial releases and reconveyances, deeds, closing statements, and all of documents required to sale-out the 607 lots of the development. The Chartered Parties, as well as the purchasers and their lenders, required that all liens and encumbrances be paid off through the closing of each of the 55 lot sales involved. Chartered Realty relied upon United Title's expertise and fiduciary relationship to fulfill the functions of escrow, title, and insurance provider to it and its affiliate, and to assure the sale-out transactions conveyed good, marketable title, without encumbrances. This did not happen here despite their agreement.

NRS 107.078(2) and (3) provide:

> 2. Within 45 calendar days after a debt secured by a deed of trust made on or after October 1, 1995, is partially discharged and a properly executed request for a partial reconveyance is received by the trustee, the trustee shall cause to be recorded a partial reconveyance of the deed of trust.

> 3. If the beneficiary fails to deliver to the trustee a properly executed request for a partial reconveyance pursuant to subsection 1, or if the trustee fails to cause to be recorded a partial reconveyance of the deed of trust pursuant to subsection 2, the beneficiary or the trustee, as the

Supreme Court
of
Nevada

(0) 1947A

case may be, is liable in a civil action to the grantor, the grantor's heirs or assigns in the amount of $1,000, plus reasonable attorney's fees and the costs of bringing the action, and the beneficiary or trustee is liable in a civil action to any party to the deed of trust for any actual damages caused by the failure to comply with the provisions of this section and for reasonable attorney's fees and the costs of bringing the action.

The district court's findings of fact number 37 states:

After weighing the testimony of the witnesses and a review of the limited documents, the Court finds, consistent with the procedures of the escrow department of United Title, prior to each individual home sale, the escrow department of United Title requested a payoff from Chartered Realty if a DoT appeared on the preliminary title report. For each individual home sale, *Chartered Realty would provide the payoff amount and instruct United Title to partially release and reconvey title for the Encumbered Lot*, in order for the sale of the individual home to be effectuated and to deliver good, marketable title to the purchaser at closing as warranted in the Deed and agreed upon in the Escrow Agreements and Instructions.

(Emphasis added). Thus, after trial, the district court explicitly made a finding that Chartered Realty properly instructed United Title to partially release and reconvey title for each encumbered lot in compliance with N.R.S. 107.078. Substantial evidence supports the district court's finding. *See, e.g., Wells Fargo Bank, N.A. v. Radecki*, 134 Nev. 619, 621, 426 P.3d 593, 596 (2018) (explaining we will not overturn the district court's findings of fact following a bench trial unless those findings are "clearly erroneous or not supported by substantial evidence"). Because the district court's findings of fact state that Chartered Realty expressly complied with the statute while United Title did not, I cannot join the majority. Further,

although the district court's conclusion that followed on this point was written somewhat ineloquently, the conclusion following its findings—that United Title violated the statute by failing to record the partial conveyance—was not error. *See, e.g., Sheehan & Sheehan v. Nelson Malley and Co.*, 121 Nev. 481, 486, 117 P.3d 219, 223 (2005) (explaining we will not overturn findings of fact and conclusions of law that are supported by substantial evidence); *see also Thomas v. J.C. Penney Co., Inc.*, 531 F.2d 270 (5th Cir. 1976) (upholding clear findings of fact even though the corresponding conclusion of law was inartfully drafted). As a result, the district court also properly ordered reasonable attorney fees against United Title for its violations of the statute.

Finally, I would note that NRS 107.079(7) states:

> This section shall not be deemed to create an exclusive procedure for the reconveyance of a deed of trust and the issuance of surety bonds and declarations to release the lien of a deed of trust, and shall not affect any other procedures, whether or not such procedures are set forth in statute, for the reconveyance of a deed of trust and the issuance of surety bonds and declaration to release the lien of a deed of trust.

Because United Title (Chicago Title of Nevada, Inc.'s successor-in-interest) wore multiple hats in this case by controlling escrow, title, insurance, and trustee services, it was solely responsible for the failure to record the reconveyances in this case, which clouded title. Therefore, I further disagree with giving credence to form over substance based on these unique facts, because the parties followed all of United Title's exclusive procedures only to have United Title, at trial, utilize the statute to shield itself from liability for its own failures. *Cf. Loomis v. Whitehead*, 124 Nev. 65, 70, 183 P.3d 890, 893 (2008) (approving a prior decision that looked to the purpose of a statute and declined to elevate form over substance in

enforcing that statute). I therefore respectfully dissent, as I would affirm the district court's findings of fact and conclusions of law after the bench trial held in this case.

_____, J.
Silver

cc:    Hon. Elizabeth Goff Gonzalez, District Judge
Stephen E. Haberfeld, Settlement Judge
Fidelity National Law Group/Las Vegas
Barnett & Associates
Eighth District Court Clerk